Albert **TOVAR**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 13–88–068–CR to
13–88–071–CR.

Court of Appeals of Texas,
Corpus Christi.

Aug. 31, 1989.

Rehearing Denied Sept. 28, 1989.

Guadalupe Olvera, III, Brownsville, Joseph A. Connors, III, McAllen, for appellant.

Ben Euresti, Jr., County Crim. Dist. Atty., Brownsville, for appellee.

Before NYE, C.J., and KENNEDY and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

Appeal is taken from a conviction of four counts of official oppression. Tex.Penal Code Ann. § 39.02 (Vernon 1989). After finding appellant guilty, the jury assessed punishment for each offense at one year's confinement in the Cameron County Jail, probated for one year, plus a $1,000.00 fine.

Appellant, while acting as a public servant and under color of his office, to wit: Constable of Precinct Number 7 of Cameron County, Texas, was convicted of intentionally arresting Jose Angel Cuellar, knowing his arrest was unlawful. In this same capacity, he was also convicted of intentionally detaining Luisa Contreras Rodriguez, Olga Lydia Reyes, and Rosa Maria Castillo, knowing their detentions were unlawful. Appellant raises twenty-nine points of error. We modify the trial court's judgment and as modified, we affirm the judgment.

About 6:30 p.m. on July 24, 1987, appellant, wearing his constable's uniform, entered the Tenampa, a bar just outside the Santa Rosa city limits. He left his gun at the counter and sat down. A security guard, Jose Angel Cuellar, asked him to retrieve his weapon. Appellant, in turn, identified himself to Cuellar as a constable and showed him his badge. He explained to Cuellar that Cuellar's uniform made Cuellar subject to arrest for impersonating a police officer. Cuellar's uniform consisted of a blue short-sleeve shirt with a United States flag, security officer's badge, and

light blue pants with blue stripes. When Cuellar asked appellant if he knew the difference between a police officer and a security guard, appellant arrested him. Cuellar testified that appellant arrested him for disorderly conduct and impersonating a police officer. Cuellar did not identify himself as a police officer. He only asked appellant to remove his weapon. He spoke to appellant in a low voice and did not threaten him.

Officers Aranda and Guerra, both of whom observed Cuellar's arrest, testified that appellant arrested Cuellar for impersonating a police officer. However, neither officer saw anything indicating that Cuellar committed this offense. Aranda also said that Cuellar did not argue or fight with appellant, curse at him, or provoke him.

After Cuellar's arrest, a waitress, Olga Reyes, sat at appellant's table. Eventually, appellant summoned another waitress, Rosa Castillo, to his table. He offered the women two or three hundred dollars if they would party with him. Reyes told her boss about the offer, however, her boss would not allow her to leave. When appellant learned this, he grew angry and told Reyes that he was going to close the Tenampa. He showed Reyes and Castillo his badge and ordered the music stopped. He escorted Reyes, Castillo, and sixteen other women outside. Reyes, Castillo, and another waitress, Luisa Rodriguez, said that appellant told them that they were going to Immigrations. The three women also said that appellant ordered them into his car and that appellant, Manuel Perez, and an unidentified male transported them to a Mercedes hotel. Castillo testified that, out of fear, she had sexual relations with appellant at this hotel.

Appellant told his own version of the facts testifying that for some time prior to July 24, 1987, several people complained to him about the Tenampa. These complaints involved prostitution and minors consuming alcohol on the premises. In early June, appellant met Rosa Castillo. She told him that she worked at the Tenampa, and he informed her about the complaints. Castil-

lo agreed to become appellant's informant. She provided him information regarding an alleged prostitution ring involving the Tenampa's owner and its female employees. She also told him that the Tenampa sold alcohol to minors. Appellant said that on July 24, 1987, he visited the Tenampa intending to conduct an undercover operation. While at the Tenampa, he was thrice solicited for prostitution and saw minors consuming alcohol on the premises. He said that when Cuellar asked him to retrieve his weapon, he asked Cuellar why he wore a uniform and told him that he could be charged with impersonating a police officer. He said that Cuellar warned him that if he hurt anyone, he would pay for it and be sorry. According to appellant, Cuellar began waving his arms at him. Appellant said that he arrested Cuellar for both disorderly conduct and impersonating a police officer. He later denied arresting him for the latter charge.

Appellant explained that he closed the Tenampa because of prostitution and because of minors consuming alcohol on the premises. He also had checked the Tenampa's female employees and allegedly found them to be aliens. He said that he placed Castillo in his car for protection and that she requested Rodriguez and Reyes to join her. He said that he dropped them off at Tio Cano Road.

Justice of the Peace Henry Dierks testified that on July 24, 1987, appellant served as constable of precinct 7, Cameron County, Texas. He also said that Cuellar was only charged with disorderly conduct, but that appellant told him that he might also file an impersonating a police officer charge against Cuellar.

■ In his first point of error, appellant complains that the trial court lacked jurisdiction because the indictments fail to allege a crime. The appellate record contains neither a motion to quash the indictments nor any other motion or exception sufficient to raise this complaint to the trial court. Tex.Code Crim.Proc.Ann. art. 1.14(b) (Vernon Supp.1989) provides, in relevant part, that an accused "waives and forfeits the right to object to the defect" and "may not raise the objection on appeal or in any other post-conviction proceeding" if he "does not object to [the] defect, ... of form or substance" before trial on the merits. Appellant failed to present his alleged indictment error to the trial court at pre-trial; he is, therefore, prohibited from raising this alleged error for the first time on appeal. *See* Tex.Code Crim.Proc.Ann. art. 1.14(b) (Vernon Supp.1989). Appellant's first point of error is overruled.

■ In his second point of error, appellant argues that the district court did not have jurisdiction to hear his case because the State charged him with official oppression, a misdemeanor. Appellant was tried in district court on four counts of official oppression. Our penal code classifies official oppression as a Class A misdemeanor. Tex.Penal Code Ann. § 39.02(c) (Vernon 1989). In *Emerson v. State*, 727 S.W.2d 267, 268–69 (Tex.Crim.App.1987), the Court of Criminal Appeals held that official oppression is official misconduct as that term is used in Tex.Code Crim.Proc.Ann. art. 4.05 and Tex.Const. art. V, § 8. Tex.Code Crim.Proc.Ann. art. 4.05 (Vernon Supp. 1989) provides, in relevant part, that "[d]istrict courts and criminal district courts shall have original jurisdiction in criminal cases of the grade of felony, [and] of all misdemeanors involving official misconduct...."

Appellant calls our attention to the 1985 amendment to Tex. Const. art. V, § 8. We have examined the 1985 amendment and conclude that Tex. Const. art. V, § 8, as amended, does not affect district court jurisdiction to entertain cases involving official misconduct. As amended, Tex. Const. art. V, § 8 (Vernon Supp.1989) provides, in relevant part, that district courts have jurisdiction of all actions unless "exclusive, appellate or original jurisdiction may . be conferred by this Constitution or *other law* on some other court, tribunal, or administrative body." (emphasis added). We are not aware of any law or constitutional precept stripping district courts of their jurisdiction over offenses involving official misconduct. Appellant's second point of error has no merit.

In his third and fourth points of error, appellant complains that the State violated U.S. Const. amend. V & XIV and Tex. Const. art. 1, § 19 (Vernon 1984) by commenting during final summation that both he and Manuel Perez pleaded the Fifth Amendment during the guilt/innocence phase of appellant's trial.

It is a violation of both our State and federal constitutions for a prosecutor to comment on an accused's failure to testify. *Jones v. State*, 693 S.W.2d 406, 407 (Tex. Crim.App.1985); *Garrett v. State*, 632 S.W.2d 350, 351 (Tex.Crim.App.1982). In addition, Tex.Code Crim.Proc.Ann. art. 38.-08 (Vernon 1979) expressly prohibits a prosecutor from alluding to or commenting on an accused's failure to testify. *Owen v. State*, 656 S.W.2d 458, 459 (Tex.Crim.App. 1983).

█ In evaluating a prosecutor's argument to determine if it was a comment on the accused's failure to testify, the language used must be viewed from the jury's standpoint. *Jones*, 693 S.W.2d at 407. The implication of the language used must be plain. It is not enough that it might be construed as an indirect reference to the accused's silence. *Banks v. State*, 643 S.W.2d 129, 134 (Tex.Crim.App.1982); *Todd v. State*, 598 S.W.2d 286, 294 (Tex.Crim. App.1980).

The test to be employed is whether the language used was manifestly intended or characterized in such a way that the jury would naturally and necessarily take it to be a comment on the accused's failure to testify. *Jones*, 693 S.W.2d at 407; *Owen*, 656 S.W.2d at 459; *Banks*, 643 S.W.2d at 134. This test must be applied to the facts and circumstances of each case. *Jones*, 693 S.W.2d at 407; *Dickinson v. State*, 685 S.W.2d 320, 323 (Tex.Crim.App.1984). Further, if the remark called the jury's attention to the absence of evidence that only appellant's testimony could supply, the conviction must be reversed. *Angel v. State*, 627 S.W.2d 424, 426 (Tex.Crim.App.1982).

█ During guilt/innocence, appellant took the witness stand and testified concerning the events of July 24, 1987. He did not discuss the alleged sexual assault or that he allegedly took the three women to a Mercedes hotel. On cross-examination, he pleaded the Fifth Amendment when asked about these allegations and his alleged prostitution involvement. In its final summation, the State made the following remarks:

Who else pled the Fifth? If those three barmaids had been engaged in prostitution, and they were asked many times and they didn't want to incriminate themselves, they had the same right and (sic) they did to plead the Fifth. However, the defendant did.

Those three illegal aliens, those three individual females, they are persons under our law, and they are subject to the same protection of the very same constitution that affords this defendant the right to come and stand before you, tell you the truth and nothing but the truth, but when the questions get tough he says, "I plead the Fifth." That same constitution that gives him and his chronies (sic) that right protects the most vulnerable members of our society, those that can't even come and complain because at the point they complain they'll be deported.

Mr. Olvera says, "Help him. Help him." We need honest public officials. We need public officials with integrity. We don't need lawmen very tough in the Tenampa Bar who put their gun behind the counter and then when they tell him to take the gun he says, "I'm going to show you" and arrests him. And when we get to the courtroom, "Yes, I swear to tell the truth, the whole truth, and nothing but the truth" and our lawman pleads the Fifth. Think about that. Our own elected official, Albert Tovar, the one with the badge and the gun, pleads the Fifth. He does not want to incriminate himself. Is that what we want? I submit to you, Ladies and Gentlemen, that our society stands for a lot more than that.

Appellant voiced no objection to these statements.

█ We conclude that the State's remarks, when viewed from the jury's stand-

point, were manifestly intended or characterized so that the jury would necessarily and naturally see the language as a comment on appellant's failure to testify. *See Jones*, 693 S.W.2d at 407; *Owen*, 656 S.W.2d at 459. By reminding the jury that appellant pleaded the Fifth Amendment, the State directly called the jury's attention to appellant's failure to testify even though he did take the witness stand. Furthermore, appellant correctly asserted his Fifth Amendment privilege when questioned concerning the alleged sexual assault and his alleged prostitution involvement. A witness, who refuses to answer on Fifth Amendment grounds, cannot be compelled to answer unless it is perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken in asserting the privilege, and that the answer cannot possibly tend to incriminate the witness. *Grayson v. State*, 684 S.W.2d 691, 696 (Tex.Crim.App.1984). When an accused takes the stand as a witness on his own behalf, he is subject to the same rules as any other witness. *Harris v. State*, 466 S.W.2d 761 (Tex.Crim.App. 1971). However, he may not be attacked by possible extraneous offenses of which he has not been convicted. *Baxter v. State*, 645 S.W.2d 812, 816 (Tex.Crim.App. 1983). In the instant case, appellant had not been convicted of the alleged sexual assault or of the alleged prostitution. Moreover, if the trial judge had compelled appellant to answer the questions, we could not say that his responses would not possibly tend to incriminate him. *See Grayson*, 684 S.W.2d at 696.

■ We now analyze appellant's complaint concerning the State's comments relating to Perez' Fifth Amendment assertions. During guilt/innocence, Perez took the witness stand on appellant's behalf. He testified that he and Tovar were at the Tenampa on July 24, 1987. On cross-examination, the trial judge excused the jury, and the State advised Perez about his Fifth Amendment rights. Afterwards, Perez requested an attorney, and the trial judge announced that Perez had the right to request an attorney in the jury's presence. The jury took their seats, and Perez failed to renew his request. He did, however, plead the Fifth Amendment when questioned regarding his alleged involvement and knowledge of the events of July 24, 1987. In its final summation, the State made the following remarks:

> I ask you to consider the credibility of the witnesses, and I ask you to recall and don't forget who pled the Fifth Amendment. I didn't have to warn Manuel Perez of his constitutional rights. I could have done it right before you and let him plead his Fifth Amendment rights right before you. But I didn't. I think fair is fair.

> You had heard all the testimony. You had heard about Manuel Perez' involvement. We warned him outside your presence. He comes back. What does he do? He pleads the Fifth. If he had been your witness to explain to you what happened it would have been Manuel Perez. What does he do? He pled the Fifth.

*Appellant voiced no objection to these statements.*

■ We conclude that the State erred in commenting on Perez' Fifth Amendment assertions. The general rule is that when a witness, other than the accused, declines to testify on the ground that his answers would tend to incriminate him, that refusal alone cannot be made the basis of any inference by the jury, *either favorable to the prosecution or to the accused. Ellis v. State*, 683 S.W.2d 379, 382–83 (Tex.Crim. App.1984). The rationale is that in refusing to answer a question, a witness is exercising a personal constitutional right which should neither help nor harm any third person.

In other words, the *Ellis* rule insures that a third party witness' Fifth Amendment assertions have a "neutral effect" on the State and the accused. Here, the State's comments were clearly intended to have an impact on the jury favorable to the State. Hence, Perez' assertions no longer had a "neutral effect" on the State and the appellant. Furthermore, Perez correctly asserted his Fifth Amendment privilege.

If the trial court had compelled him to answer the questions, we could not say that his responses would not possibly tend to incriminate him. *See Grayson,* 684 S.W.2d at 696.

The State argues that appellant failed to preserve error by not objecting to these comments. We disagree and hold that an instruction to disregard would not have cured the error, and thus, appellant did not waive the error by failing to object. Normally, the failure to request a motion to disregard will waive error only if the prejudicial effect of the State's remarks could have been cured by a proper instruction. *Montoya v. State,* 744 S.W.2d 15, 37 (Tex.Crim.App.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988). However, the prohibition against a direct comment on the accused's failure to testify is mandatory and the adverse effect of any reference to the accused's failure to testify is not generally cured by instruction. Thus, in the case before us, given the State's direct reference to appellant's failure to testify, an instruction to disregard would have made no difference. *See Montoya,* 744 S.W.2d at 37.

We must now determine if the error was harmful to appellant under Tex.R. App.P. 81(b)(2). *Stahl v. State,* 749 S.W.2d 826, 829–32 (Tex.Crim.App.1988); *Harrison v. State,* 766 S.W.2d 600, 603 (Tex.App. —Fort Worth 1989, no pet.). Rule 81(b)(2) provides that if an appellate court finds error, then the judgment shall be reversed unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or the punishment. *See Montoya,* 744 S.W.2d at 35–38.

The relevant portions of Tex.Penal Code Ann. § 39.02 (Vernon 1989) state that a public servant, acting under color of his office or employment, commits official oppression if he intentionally subjects another to arrest or detention that he knows is unlawful. Subsection "b" of this statute states that "a public servant acts under color of his office or employment if he acts or purports to act in an official capacity or takes advantage of such actual or purport-ed capacity." Therefore, in order to prove that appellant committed four counts of official oppression, the State had to show that appellant, while acting as a public servant and under color of his office or employment, to wit: Constable of Precinct Number 7 of Cameron County, Texas, intentionally arrested Cuellar, knowing his arrest was unlawful, and intentionally detained Castillo, Rodriguez, and Reyes knowing their detentions were unlawful. *See* Tex.Penal Code Ann. § 39.02 (Vernon 1989).

The facts indicate that appellant arrested Cuellar for both impersonating a police officer and disorderly conduct. Tex.Penal Code Ann. § 37.11(a) (Vernon 1989) provides that a person impersonates a public servant if he does so "with intent to induce another to submit to his pretended official authority or to rely on his pretended official acts." To violate § 37.11(a), there must be a false assumption or pretension by a person that he is a public servant and overt action in this capacity. *See Boyett v. State,* 368 S.W.2d 769, 771 (Tex.Crim. App.1963); Tex.Penal Code Ann. § 37.11(a) (Vernon 1989). Here, appellant identified himself to Cuellar as a constable and showed him his badge. On the other hand, Cuellar did not tell appellant, by words or dress, that he was a public servant or a police officer. Furthermore, Cuellar did not induce appellant to submit to any pretended official authority or to rely on any pretended official acts. We conclude that Cuellar did not impersonate a public servant or police officer when he asked appellant to retrieve his weapon. *See Boyett,* 368 S.W.2d at 771; Tex.Penal Code Ann. § 37.11(a) (Vernon 1989). Therefore, appellant unlawfully arrested Cuellar for impersonating a police officer.

The relevant sections of Tex. Penal Code Ann. § 42.01(a) (Vernon 1989) provide that a person commits disorderly conduct if he intentionally or knowingly:

(1) uses abusive, indecent, profane, or vulgar language in a public place, and the language by its very utterance tends

to incite an immediate breach of the peace;

\* \* \* \* \* \*

(4) abuses or threatens a person in a public place in an obviously offensive manner;

(5) makes unreasonable noise in a public place....

(6) fights with another in a public place;

The facts indicate that Cuellar did not violate any of the relevant subsections of § 42.01(a). Therefore, appellant unlawfully arrested Cuellar for disorderly conduct. Additionally, the evidence clearly shows that when appellant arrested Cuellar, he acted as a public servant and under color of his office or employment, to wit: Constable of Precinct Number 7 of Cameron County, Texas. We hold that appellant committed official oppression by arresting Cuellar. *See* Tex.Penal Code Ann. § 39.02 (Vernon 1989).

▆▆ We now examine the facts pertaining to the indictments naming Reyes, Rodriguez, and Castillo as victims. The facts indicate that appellant showed Reyes and Castillo his badge and ordered them and Rodriguez into his car. The women testified that appellant told them that they were going to Immigrations. Instead, he took them to a Mercedes hotel. The three women testified that while they were in appellant's custody, he held them against their will. The evidence clearly shows that appellant unlawfully detained the three women. Additionally, the evidence indicates that when appellant detained them, he acted as a public servant and under color of his office or employment, to wit: Constable of Precinct Number 7 of Cameron County, Texas. We hold that appellant committed official oppression by detaining the three women. *See* Tex.Penal Code Ann. § 39.02 (Vernon 1989).

Despite our conclusions that the prosecutor's remarks constituted a direct comment on appellant's failure to testify, and that the State wrongfully commented on Perez' Fifth Amendment assertions, we hold that these impermissible comments made no contribution to appellant's conviction or

punishment beyond a reasonable doubt. Tex.R.App.P. 81(b)(2). This is not a circumstantial evidence case and the evidence overwhelmingly supports the jury's guilty verdicts. *See Mayberry v. State*, 532 S.W.2d 80, 85 (Tex.Crim.App.1975); *Garcia v. State*, 758 S.W.2d 937, 939 (Tex.App.— El Paso 1988, no pet.). Furthermore, the State did not call the jury's attention to the absence of evidence that only appellant's testimony could supply. *See Angel*, 627 S.W.2d at 426. The comments only referred to appellant's and Perez' Fifth Amendment assertions. Additionally, the State's final summation recalled the evidence pertaining to each charge and applied the evidence to the law.

Finally, appellant had no prior criminal record, and the jury accordingly assessed punishment well below the maximum. Our penal code classifies official oppression as a Class A misdemeanor, Tex.Penal Code Ann. § 39.02(c) (Vernon 1989), punishable by a fine not to exceed $2,000.00; confinement in jail for up to one year; or both. Tex.Penal Code Ann. § 12.21(1)–(3) (Vernon 1974). Appellant's sentence fell well below the maximum. We overrule appellant's third and fourth points of error.

▆▆ Appellant, in his fifth and sixth points of error, complains that reversible error occurred when the State failed to cease appellant's cross-examination immediately after he invoked his Fifth Amendment privileges. Appellant directs our review to the statement of facts.

During cross-examination, the State asked appellant if he, Manuel Perez, and the unidentified male took the three women to a Mercedes motel. Appellant pleaded the Fifth Amendment. Defense counsel objected and argued that the question fell outside the scope. He maintained that appellant faced no Cameron County accusations relating to escorting ladies. The trial court overruled his motion for mistrial. Defense counsel advised appellant to plead the Fifth Amendment to questions concerning issues not before the trial court. The State asked appellant two more questions relating to his and Perez' involvement with the three women in Mercedes. He pleaded

the Fifth Amendment to both questions. Next, the State asked appellant a question regarding the alleged sexual assault. Appellant once again pleaded the Fifth Amendment and defense counsel renewed his mistrial request, arguing that the question related to an offense not alleged in the indictments. Again, the trial court overruled his request for a mistrial.

As we understand appellant's argument on appeal, he complains that once it became clear from the State's cross-examination that he would invoke his Fifth Amendment privilege, the State should have ceased questioning him immediately. However, appellant failed to lodge this specific objection at the trial level. When the trial objection is not the same as that urged on appeal, the complaint is not properly preserved for our review. *Guzmon v. State,* 697 S.W.2d 404, 411 (Tex.Crim.App.1985), *cert. denied,* 475 U.S. 1090, 106 S.Ct. 1479, 89 L.Ed.2d 734 (1986). We overrule appellant's fifth and sixth points of error.

■ Appellant, in his seventh and eighth points of error, complains that error occurred when the State failed to halt Manuel Perez' cross-examination immediately after he invoked his Fifth Amendment privileges. He also complains that error occurred when the trial court overruled his "request" that the State elicit Perez' Fifth Amendment assertions outside the jury's presence. On cross-examination, Perez pleaded the Fifth Amendment in response to several State's questions pertaining to the events of July 24, 1987. Afterwards, the State asked him a question which he answered without pleading the Fifth Amendment. Defense counsel objected on the grounds that the question was irrelevant and "not called for." He also stated: "Furthermore, I would like to ask counsel, if he is going to continue asking that same line of questions to get the plea of Fifth Amendment, it be done outside of the presence of the jury so we know how far we are going to go." The trial court overruled the objections.

Our appellate rules clearly provide that in order to preserve a complaint for appellate review, a party must have presented to the trial court a *timely* request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context. Tex.R.App.P. 52(a). In the instant case, when Perez refused to answer State's questions based on his Fifth Amendment privilege, appellant voiced no objection. His failure to object caused the objection or matter to be waived and preserves nothing for our review. *See* Tex.R.App.P. 52(a). Furthermore, appellant's request that the State elicit Perez' Fifth Amendment assertions outside the jury's presence fails to state the specific grounds for the ruling, if any, he desired the trial court to make. The specific grounds are not apparent from the context. His failure to specify the grounds waives error, if any, and preserves nothing for our review. *See* Tex.R.App.P. 52(a). We overrule appellant's seventh and eighth points of error.

■ Appellant, in his ninth and tenth points of error, argues that the trial court erred in sustaining the State's hearsay objections. During direct examination, appellant testified that he received numerous telephone calls from concerned citizens regarding the Tenampa. He attempted to explain what these callers allegedly said, but the trial court intervened, sustaining the State's hearsay objection. Next, he attempted to testify about what Rosa Castillo allegedly told him. Once again, the trial court intervened, sustaining the State's hearsay objection. Appellant contends that since he is charged with unlawfully arresting Cuellar and unlawfully detaining the three women, the probable cause supporting his conduct was before the trial court. Therefore, hearsay testimony supporting his probable cause was admissible.

Appellant failed to make an offer of proof of the excluded evidence pursuant to Tex.R.App.P. 52(b), or to make a formal bill of exceptions as provided by Rule 52(c). Appellant has the burden to insure that a sufficient record is presented to show error requiring reversal. Tex.R.App.P. 50(d). Since appellant failed to perfect a bill of exceptions or make an offer of proof to

show what his testimony would have been, nothing is preserved for our review. *See* Tex.R.App.P. 50(d). Appellant's ninth and tenth points of error are overruled.

Appellant, in points eleven through eighteen, argues that the trial court violated U.S. Const.Amend. VI and XIV, and Tex. Const. art. I, § 19 (Vernon 1984) by preventing him from effectively presenting his defense when it excluded testimony from six defense witnesses. We conclude that appellant has shown no harm since no bill of exceptions or offer of proof was perfected to show what the witnesses' testimony would have been had they been allowed to testify. *See* Tex.R.App.P. 50(d). These points of error are also overruled.

By point nineteen, appellant argues that the trial court erred in overruling his objection to Olga Lydia Reyes' testimony relating that she was taken to a Mercedes hotel. On the State's direct examination, Reyes testified, without objection, that she was taken to a Mercedes hotel. In order to preserve a complaint for appellate review, appellant must have presented to the trial court a timely objection, stating the specific grounds for the ruling he desired the trial court to make. Tex.R.App.P. 52(a). Consequently, appellant's failure to lodge a timely trial objection constitutes a waiver of the objection or matter. *See* Tex.R. App.P. 52(a). We overrule appellant's nineteenth point of error.

By point twenty, appellant argues that the trial court erred in overruling his motion to strike Olga Lydia Reyes' answer that Manuel Perez tried to stop her from leaving the hotel room. While on direct examination, Reyes testified that she tried to leave the hotel room; however, Perez tried to stop her. Appellant objected and asked that the answer be stricken from the record. He argued that the question fell outside the scope of the case. The trial court overruled the objection.

We disagree with appellant's argument and hold that the trial court properly overruled appellant's objection. It is a fundamental principle of law that an accused is entitled to be tried on the accusations stated in the State's pleadings and not for some collateral crime or for being a criminal generally. *Smith v. State*, 646 S.W.2d 452, 455 (Tex.Crim.App.1983). Therefore, the State is generally forbidden from proving prior specific acts of misconduct, similar happenings, or extraneous offenses committed by the accused. *Elkins v. State*, 647 S.W.2d 663, 665 (Tex.Crim.App. 1983).

The evidence may, however, under certain circumstances, become admissible; where an offense is one continuous transaction, or, another offense is closely interwoven with the case at trial, the jury has a right to hear all the facts surrounding the event so that they may realistically evaluate the evidence. *See Archer v. State*, 607 S.W.2d 539, 542 (Tex.Crim.App.1980), *cert. denied*, 452 U.S. 908, 101 S.Ct. 3037, 69 L.Ed.2d 410 (1981). The admissibility of the facts surrounding the crime charged is within the trial court's sound discretion and will not be disturbed on appeal unless a clear abuse of discretion is shown. *See Burgett v. State*, 646 S.W.2d 615, 618 (Tex. App.—Fort Worth 1983, pet. ref'd).

Reyes testified that Perez assisted appellant in transporting her to a Mercedes hotel room. Perez' conduct is closely interwoven with appellant's conduct, i.e., unlawfully detaining Reyes. We hold that the trial judge did not abuse his discretion by admitting Reyes' testimony. *See Burgett*, 646 S.W.2d at 618. We overrule appellant's twentieth point of error.

Appellant, in his twenty-first and twenty-second points of error, argues that the trial court erred in overruling his motion for a mistrial following Maria Luisa Rodriguez' testimony regarding extraneous offenses. Appellant calls our attention to four situations.

On State's direct examination, Rodriguez testified that appellant took her to a Mercedes hotel. Appellant objected on the grounds that her testimony referred to an extraneous offense. The trial court overruled his motion for a mistrial. Second, the State asked her what happened inside the hotel room. Appellant re-urged his motion for mistrial on the grounds that the ques-

tion called for an extraneous offense. The trial court overruled the objection and Rodriguez testified that appellant forced Rosa Castillo into another room. Third, the State asked Rodriguez whether she was free to leave the hotel room whenever she pleased. Appellant objected on the grounds that this question called for an extraneous offense. The trial court overruled the objection.

In these three situations, the evidence was admissible to show one continuous transaction and that the cases on trial were blended or closely interwoven with the events at the Mercedes hotel. *See Archer*, 607 S.W.2d at 542. This testimony was relevant concerning whether appellant unlawfully detained Rodriguez and Castillo. We hold that the trial judge did not abuse his discretion by admitting Rodriguez' testimony. *See Burgett*, 646 S.W.2d at 618.

▮ Finally, in the fourth situation, the State asked Rodriguez where she went after leaving the hotel room. She responded that appellant's friend beat her. The State asked her where she was beaten and appellant objected on the ground that the statement related to an extraneous offense. The trial court instructed the jury to disregard the statement but denied appellant's motion for mistrial.

In *Carey v. State*, 537 S.W.2d 757, 759 (Tex.Crim.App.1976), the State asked an improper question which suggested the accused was involved in an extraneous offense. The accused's objection was sustained, but his motion for mistrial was overruled. The Court of Criminal Appeals held that the reference to an extraneous offense was not so harmful that it could not be cured by the court's instruction to disregard. *Id.* at 759; *see also Bolden v. State*, 504 S.W.2d 418, 419–20 (Tex.Crim. App.1974); *White v. State*, 444 S.W.2d 921, 922 (Tex.Crim.App.1969).

In the present case, Rodriguez' testimony and the State's question were followed by an instruction to disregard. We conclude that the testimony and question complained of were not so clearly calculated to inflame the minds of the jury to prevent the possibility of cure by instruction. We

overrule appellant's twenty-first and twenty-second points of error.

By point twenty-three, appellant argues that the trial court erred in overruling his motion for a mistrial following Rosa Castillo's testimony regarding extraneous offenses. Appellant calls our attention to five situations.

▮ The State asked Castillo what happened at the Mercedes motel. Appellant objected that the question referred to conduct in Hidalgo County and was, therefore, irrelevant. He urged the trial court to enforce his "motion." The record reflects that the trial court granted his motion in limine, preventing the State from introducing evidence of appellant's Hidalgo County indictments. The trial court overruled appellant's objection, and Castillo explained what happened. We hold that appellant failed to preserve error regarding this question. An objection that a question is "irrelevant" is too general to preserve error. *Lee v. State*, 681 S.W.2d 656, 662 (Tex.App.—Houston [14th Dist.] 1984, pet. ref'd). Furthermore, the motion in limine does not refer us to any specific Hidalgo County indictments.

Concerning the second and third instances, we also hold that appellant failed to preserve error. The State asked Castillo who was with her in the other hotel room. She said that appellant was with her. Appellant objected on the grounds of relevancy. This objection preserves nothing for our review. *See Lee*, 681 S.W.2d at 662. Next, the State asked Castillo what happened inside the room with appellant. Appellant objected that the question fell "[o]utside the scope" and was "irrelevant." The latter objection also preserves nothing for our review, *Lee*, 681 S.W.2d at 662. The former objection was too general for the trial court to consider. Tex.R.App.P. 52(a).

▮ In the fourth instance, the State asked Castillo what she did with appellant out of fear. She answered that she had sexual relations with him. Appellant objected on the ground that this testimony referred to sexual activity which had no

bearing on the case. The trial court overruled the objection. This testimony was admissible to show that there was one continuous transaction and that the cases on trial were blended or closely interwoven with the events at the Mercedes hotel. *See Archer*, 607 S.W.2d at 542. We hold that the trial judge did not abuse his discretion by admitting this testimony. *See Burgett*, 646 S.W.2d at 618.

■ In the final situation, Castillo testified that she gave birth one month before appellant had sexual relations with her. The State asked her if this sexual activity had any affect on her. Appellant objected that the question fell outside the scope of the case. The trial court sustained the objection. Generally, the mere asking of questions does not constitute reversible error where no new fact is injected and no statute is violated. *Kirkpatrick v. State*, 515 S.W.2d 289, 294 (Tex.Crim.App.1974). In the instant case, the State's question neither injected a new fact nor violated any statute. We conclude that the State's question did not constitute reversible error. *See Kirkpatrick*, 515 S.W.2d at 294.

By point twenty-four, appellant argues that admission of the extraneous offenses denied him a fair and impartial trial. We have already discussed appellant's points of error relating to extraneous offenses. For reasons previously stated, we hold that admission of these extraneous offenses did not deny appellant a fair and impartial trial.

■ By point twenty-five, appellant complains that the trial court erred in overruling his objection to a question the State asked Manuel Perez. On cross-examination, the State asked Perez wehther Castillo, Reyes, and Rodriguez would testify truthfully if they said that appellant, on July 24, 1987, detained them and took them to a Mercedes motel to have sexual relations. Appellant objected on the grounds that the question called for an opinion and conclusion. The trial court overruled the objection. However, Perez pleaded the Fifth Amendment, and the State moved to a different topic.

Here, the prosecutor's question referred to facts already in evidence. Reyes, Rodriguez, and Castillo previously testified that appellant detained them and transported them to a Mercedes hotel. Castillo testified that out of fear, she had sexual relations with appellant at this hotel. We know of no statute that was violated by the State's question. The State's question did not constitute reversible error. *See Kirkpatrick*, 515 S.W.2d at 294.

■ By point twenty-six, appellant argues that the trial court's judgment incorrectly orders confinement in the Texas Department of Corrections. The jury's punishment verdicts indicate that the jury assessed appellant's punishment for each offense at one year's confinement in the Cameron County Jail, probated for one year. However, the probation judgments reflect that the trial judge confined appellant to the Texas Department of Corrections.

Our penal code provides that felons be incarcerated in the Texas Department of Corrections, Tex.Penal Code Ann. §§ 12.-31–12.34 (Vernon 1974 & Supp.1989), and that persons convicted of Class A misdemeanors be confined in jail. Tex.Penal Code Ann. § 12.21 (Vernon 1974). Official oppression is a Class A misdemeanor, and therefore, we hold that the trial court erred in confining appellant to the Texas Department of Corrections. We modify the trial court's judgment to reflect that appellant be confined to the Cameron County Jail. Tex.R.App.P. 80(b)(2). We sustain point twenty-six.

■ By point twenty-seven, appellant argues that the trial court erred when it imposed probation conditions (e), (*l*), (*o*), (p), and (q). He maintains that these conditions violate Tex.Code Crim.Proc.Ann. art. 42.12, §§ 3a(b), 6(e) (Vernon Supp.1989). Article 42.12, § 3a(b) provides, in relevant part, that "[i]f probation is granted by the jury in a misdemeanor case, the court may impose only those conditions which are set out in Section 6, 6a, or 6b hereof. The court may impose any one or all of those conditions." Article 42.12, § 6(e) provides that "[a] court may not order a probationer

to make any payments as a term and condition of probation, except for fines, court costs, restitution of the victim, and other terms and conditions expressly authorized by statute."

First, appellant argues that he should not have to abide by condition (e). This condition requires appellant to report to his probation officer (in addition to condition (d)'s reporting requirements) when, where, and in the manner as may be hereafter ordered by this trial court through his probation officer. Condition (d) requires appellant to report to his probation officer at the probation office monthly between the second Monday and the following Friday of each month.

Article 42.12, § 6(a)(4) states that probation terms and conditions may require a probationer to report to his probation officer as the trial judge directs. Furthermore, a probationer need not report on a certain day each month, even though this would be the better practice. *Espinoza v. State*, 486 S.W.2d 315, 316–17 (Tex.Crim. App.1972).

■ Next, appellant contends that he should not have to comply with condition (1) which requires him to pay $150.00 to the probation department for preparing his presentence investigation (PSI). Article 42.12, § 6(a)(8) states that a probationer may be required to pay "all court costs." Article 42.12, § 4(a) allows the trial court, before imposing sentence, to direct a probation officer to prepare and present to the trial court a presentence investigation (PSI). We hold that the trial court may order the probationer to pay, as court costs, the amount expended to prepare his PSI.

■ Finally, appellant complains that he should not have to obey conditions (o), (p), and (q). Condition (o) says that if appellant defaults on any payment required by the judgment, he must file an income and expense statement showing money received and spent during the default month. Condition (p) states that should appellant be gainfully employed less than 150 hours during a given month, he must file a statement detailing his efforts to secure employment during that month. Condition (q) requires appellant, within ten days of the event, to notify his probation officer if he is arrested or charged with a crime.

A trial judge has a wide variety of terms and conditions that may be imposed when granting probation. *See* Tex.Code Crim. Proc.Ann. art. 42.12, § 6(a) (1–19) (Vernon Supp.1989). In addition, the trial court is not limited to these probationary conditions so long as the conditions imposed are reasonable. *Hernandez v. State*, 556 S.W.2d 337, 342 (Tex.Crim.App.1977); *Pequeno v. State*, 710 S.W.2d 709, 710 (Tex.App.— Houston [1st Dist.] 1986, pet. ref'd). Reasonable conditions are those that contribute significantly both to the probationer's rehabilitation and to the protection of society. *Hernandez*, 556 S.W.2d at 342–43, *Pequeno*, 710 S.W.2d at 710.

We hold that conditions (o), (p), and (q) contribute significantly to appellant's rehabilitation or society's protection. Regarding condition (o), article 42.12, § 6(a)(8) allows a trial judge to order a convicted person to pay his fine, court costs, or restitution. If appellant failed to pay his fine or court costs, the probation department must be informed why so that proper actions can be taken. This condition contributes significantly to appellant's rehabilitation. Regarding condition (p), we conclude that ordering appellant to notify his probation officer of his efforts to locate employment, which requires him to work at least 150 hours per month, also contributes significantly to his rehabilitation. Article 42.-12, § 6(a)(6) allows a trial judge to order the convicted person to work at suitable employment as far as possible. Condition (q) contributes significantly to society's protection. The probation department needs to know if appellant is arrested or charged with an offense so that necessary action may be taken.

We conclude that the probation conditions imposed by the trial judge ((e), (l), (o), (p), and (q)) did not violate Tex.Code Crim. Proc.Ann. art. 42.12, § 3a(b), 6(e) (Vernon Supp.1989).

■ By point twenty-eight, appellant argues that condition (e) is too vague and

indefinite to be enforced and constitutes an unlawful delegation of authority. We disagree. Even though condition (e) could be more specific regarding the date appellant should report to his probation officer, we conclude that the instructions contained in conditions (e) and (d) are not vague and indefinite. *See Espinoza,* 486 S.W.2d at 316–17. We also conclude that the trial judge did not improperly delegate authority to the probation department.

By point twenty-nine, appellant complains of probation condition (m). This condition provides that appellant shall "[p]rovide 200 hours of community service as directed by the Adult Probation Department." Appellant argues that condition (m) violates article 42.12, § 6(a)(10) which provides, in relevant part, that a convicted person may "[p]articipate for a time specified by the court and *subject to the same conditions* imposed on community-service probationers by Section 10A(c), (d), (g), and (h) of this article, in any community based program...." (emphasis supplied). Article 42.12, § 10A(c) states, in relevant part, that if the "court places a defendant on community-service restitution probation, the court shall require, as a condition of the probation, that the defendant work a specified number of hours at a specified community-service project for *an organization named in the court's order.*" (emphasis supplied).

In the instant case, the probation judgment failed to specify a community service project where appellant may perform his community service work. Thus, condition (m), as here applicable, violates article 42.12, § 6(a)(10). We therefore modify the trial court's judgment and delete condition (m). Tex.R.App.P. 80(b)(2). As a condition of appellant's probation, we sustain point twenty-nine.

The judgment of the trial court is MODIFIED and AS MODIFIED IS AFFIRMED.