**Richard Gus LEMON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–91–00353–CR.**

Court of Appeals of Texas,
El Paso.

July 15, 1992.

Discretionary Review Granted
Nov. 25, 1992.

Thomas S. Morgan, Midland, for appellant.

Al W. Schorre, Jr., Dist. Atty., Midland County, Midland, for State.

Before KOEHLER, BARAJAS and LARSEN, JJ.

## OPINION

KOEHLER, Justice.

A jury convicted Richard Lemon, Appellant, of misapplication of fiduciary property, to-wit: United States currency of value equal to or greater than $10,000 but less than $100,000—a second degree felony. Subsequently, the trial court assessed punishment at 10 years' imprisonment as suspended by 7 years' probation. In six points of error, Appellant seeks review of the trial court's judgment. We affirm.

In Points of Error Nos. One and Two, Appellant argues the trial court erred in refusing to submit two requested jury instructions pertaining to his culpable mental state in commission of the alleged offense. In Point of Error No. Three, Appellant challenges the trial court's denial of submission of the lesser included offense of misapplication of fiduciary property of value more than $200 but less than $10,000. Point of Error No. Four raises the issue of discriminatory use of peremptory strikes by the State. In Point of Error No. Five, Appellant contends the trial court erred in overruling his objection to the State's closing argument during guilt/innocence. In his last point of error, Appellant challenges the propriety of the trial court's imposition of 600 hours of community service as a condition of probation.

### Factual Summary

After returning a profit on a prior investment, William Karn and his wife, Katherine, gave Appellant $20,000 to again invest in oil field equipment for an anticipated 50/50 split in any profits. When the particular equipment in which Appellant had sought to invest became no longer available, he contacted the Karns who advised him to invest the money in other oil field equipment. According to Karn, Appellant later told him a profit from the investment had been realized. However, the Karns never received any return on the money invested. A dispute over how the money was invested subsequently arose. Hence, the instant charges were filed.

### Points of Error Nos. One and Two

Appellant contends he was entitled to submission of two jury instructions which, in essence, stated he could not be found guilty if the jury believed he dealt with the funds pursuant to the agreement with a reasonable good faith belief, either subjectively or objectively. In support of his argument, Appellant relies upon *Cheek v. United States*, 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), wherein the United States Supreme Court held that when properly raised, an accused is entitled to have the jury consider whether the accused acted in reasonable good faith, either objectively or subjectively, when determining whether he acted willfully in regard to alleged tax code violations. Due to the complex nature of the statutory income tax provisions, interpretation of "willfully" in the tax code is, by exception, different than the traditional meaning. *Cheek*, at ——, 111 S.Ct. at 609, 112 L.Ed.2d at 628. Thus, the Supreme Court's holding therein is not controlling when applied to the instant facts.

The statutes that Cheek was convicted of committing contained only one culpable mental state—"willfully." The Supreme Court agreed with the accused's challenge of the trial court's ruling that a good faith misunderstanding of the law must be objectively reasonable if it is to negate willfulness. The Supreme Court reasoned that proof of willfulness in a tax case, i.e., an intentional and voluntary violation of a known legal duty, required the government to establish that an accused was aware of

the duty at issue, which cannot be true if a reasonable good faith misunderstanding of the law, whether objective or subjective, is found to exist by the jury. *Cheek*, at ———–——, 111 S.Ct. at 610–11, 112 L.Ed.2d at 629–30.

In the instant case, the jury was entitled to convict Appellant if they found his scienter to be either intentional, knowing or reckless. An act is committed intentionally if it is the conscious desire of the actor either to engage in the conduct or cause the result. Tex.Penal Code Ann. § 6.03(a) (Vernon 1974). An act is done knowingly if the actor is aware of the nature of his conduct. *Id.* at § 6.03(b). One commits an act recklessly when the actor is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* at § 6.03(c). Neither of these culpable mental state definitions approach the height of the Supreme Court's expressly limited interpretation of the meaning of willful pertaining to tax code violations. Since the level of scienter needed to convict Appellant as charged is on a lower plane, we need not adopt the Supreme Court's reasoning because the protections sought to be fostered in *Cheek* are not necessary.

■ Furthermore, we note that Appellant's trial argument, in its truest sense is a request for an instruction on a mistake of fact. If properly requested and raised by the evidence, an accused is entitled to an instruction on mistake of fact if the accused (1) through a mistake of fact; (2) formed a reasonable belief from that mistaken fact; which (3) would negate the culpable mental state of the crime alleged. *Beggs v. State*, 597 S.W.2d 375, 377–78 (Tex.Crim.App.1980). Appellant's basic assertion at trial was that due to a mistake of fact, he reasonably believed he had invested the money as per the agreement. Contrary to Appellant's assertion, in *Cheek* it was argued that he had a reasonable good faith misunderstanding of the law—not fact. *See Cheek*, 498 U.S. at ——, 111 S.Ct. at 610–11, 112 L.Ed.2d at 629–30. Thus, *Cheek* is distinguishable on those grounds as well. Although Appellant may have been entitled to a mistake of fact

instruction, he did not specifically request it at trial, nor does he raise the issue on appeal. As a result, the potentially viable assertion of a mistake of fact defense is waived. The trial court did not err in denying submission of the requested instructions, and we overrule Points of Error Nos. One and Two.

### Point of Error No. Three

■ Appellant claims the trial court erred in denying his requested submission of a lesser included offense, i.e., misapplication of fiduciary property of value $200 or more but less than $10,000 (as opposed to an amount equal to or greater than $10,000 but less than $100,000). An offense can be a lesser included offense by establishing proof of the same or less than those facts necessary to prove the offense alleged or by proving a lesser injury or risk of injury than that as charged. Tex.Code Crim.Pro.Ann. art. 37.09(1) and (2) (Vernon 1981). The standard of review on appeal is twofold. First, the lesser must be included within proof of the offense charged; and second, the record must illustrate some evidence that if guilty, the accused was guilty only of the lesser. *Montoya v. State*, 744 S.W.2d 15, 28 (Tex.Crim.App.1987), *cert. denied*, 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988); *Sanders v. State*, 664 S.W.2d 705, 708–09 (Tex.Crim.App.1982); *Royster v. State*, 622 S.W.2d 442, 446–47 (Tex.Crim.App.1981, on rehearing).

■ Karn testified he and his wife entrusted Appellant with $20,000 to invest in a particular lot of oil field pipe for resale. A portion of these monies was borrowed from a bank. Appellant later notified him that the particular deal was no longer available. Subsequently, Appellant told Karn that a profit had been realized, and he also said the money had been reinvested. Although Karn requested a bill of sale as proof of the transaction, Appellant has yet to furnish such proof, and the Karns have yet to receive any return on the investment. Although the Karns both admitted on cross-examination that Appellant did remit some monies upon their request to pay the bank some of the interest on the $20,-

000, the amounts remitted did not reduce the amount entrusted to Appellant.

Appellant stipulated that the Karns' $20,000 check was deposited in his business account. On cross-examination, Appellant admitted spending $231.82 from the account for personal expenses at a western wear store. He also admitted using some of the investment monies to pay business expenses, other personal expenses and to make loans to his former wife. Furthermore, Appellant personally took some money from the account, but he stated it was not considered a salary. On cross-examination, Appellant's accountant stated Appellant told him the $20,000 was a loan. Appellant's bank records for the pertinent time periods were also introduced into evidence which illustrated many thousands of dollars in transactions for expenses, labor, taxes, inventory, etc.

It is all but obvious that, if supported by the record, proof of a lesser value would suffice to establish the first prong of the test, i.e., less than $10,000. *See Sanders,* 664 S.W.2d at 708–09. Thus, the only remaining issue is whether the record illustrates that if Appellant is guilty, he is guilty only of misappropriating fiduciary property of value less than $10,000. Appellant argues that the prosecutor's elicitation of several specific examples of expenses paid from Appellant's business accounts do not exceed $10,000. Thus, Appellant concludes there is at least some evidence that if guilty, he is guilty only of the lesser included offense of misappropriation of fiduciary property of value greater than or equal to $200 but less than $10,000. We disagree.

The records introduced at trial contain evidence of transactions which exceed $10,000 from which the jury could properly attribute to expenditures made by Appellant which exceeded the agreement by the parties. After the State provided evidence of the $20,000 loss and demonstrated the possibility of improper expenditures, the State need not specifically enumerate an amount of improper expenditures above $10,000 simply to preclude submission of a

lesser included offense on the lesser harm or injury. It was the jury's prerogative to determine whether or not the alleged amount was proven beyond a reasonable doubt. After having challenged Appellant's requested submission of the lesser included offense, the State took the risk of an acquittal if it had not adequately established misapplication of property of a value of $10,000 or more.

Contrary to Appellant's argument, the record must indicate some evidence which would eliminate or exclude a certain value of the funds from those claimed to be misappropriated ($20,000) thereby reducing the total value allegedly misappropriated below $10,000. *See Sanders,* 664 S.W.2d at 708–09. As an example, Appellant might have introduced testimony or evidence indicating the existence of some tangible oil field equipment which he could credit to the Karns' account in an amount of more than $10,000 or illustrate the existence of some intangible asset such as an entry in a bank account which Appellant could identify as belonging to the Karns of a like value. Since the record is devoid of such evidence of any type or description, Appellant cannot achieve the second prong of the test. Consequently, Appellant was not entitled to the lesser included offense. As a result, the trial court was not in error, and Point of Error No. Three is overruled.

### Point of Error No. Four

Appellant argues the trial court's denial of his *Batson* [1] objection to the State's peremptory challenge and subsequent excusing of the sole black venireman was error. Since Appellant is anglo, he does not claim the State attempted impermissibly to exclude persons of his own race. Citing *Powers v. Ohio,* 499 U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), he does, however, contend that he was denied the right to a trial by a jury whose members were selected on a racially neutral, nondiscriminatory basis.

 At the outset, it is important to set out the proper standards from which

**1.** *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

we are required to review the complaint. Initially, it is incumbent upon Appellant, if he is to be successful, to provide a record illustrating that the trial judge's findings are clearly erroneous. *Williams v. State,* 804 S.W.2d 95, 101 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991). The record is viewed in the light most favorable to the trial judge's ruling, and if the findings are supported by the record, the trial judge's ultimate conclusion that the prosecution exercised its peremptory challenges with no purposeful discrimination is not clearly erroneous. *Id.* As propounded in *Williams,* such a review is conducted in three steps. First, did the accused introduce sufficient evidence at a *Batson* hearing to establish a prima facie case of the State's purposeful discrimination? Second, if so, did the State rebut accused's prima facie case with a neutral explanation? Lastly, if the prima facie case is adequately rebutted by the State, did the accused meet his continued burden to persuade the court by countering the State's proposed neutral, nondiscriminatory explanation. *Id.* In sum, we must, if properly preserved, review the record to determine whether the State's explanations "were indeed race neutral on their face," and if so, whether evidence to the contrary demonstrates the State's "utilization of the jury strikes were nothing more than a pretext for the racially motivated exercise of the peremptory challenge...." *Id.* at 102.

■ In order to establish a prima facie case, Appellant must show (1) the excused veniremember was a member of a minority; and (2) other relevant circumstances which raise an inference of discriminatory use of peremptory challenges. *Salazar v. State,* 818 S.W.2d 405, 408 (Tex.Crim.App.1991).[2] The record indicates that Appellant is a white male. Although not in sworn testimony, Appellant's counsel stated to the trial court, in his objection, that the exclud-

ed juror (Juror No. 14) was the only black within the 37-member venire. Neither at trial nor on appeal does the State challenge Appellant's assertions regarding the excused venireman's race or that all blacks (in this case—one) were excluded by the State from the jury; thus, a prima facie case that the State utilized discriminatory criteria in the selection process is established. *Jones v. State,* 795 S.W.2d 32, 34 (Tex.App.—Houston [1st Dist.] 1990, no pet.).[3]

■ Accordingly, the burden of production shifted to the State to rebut the prima facie showing with a neutral explanation for striking the venireman. *Salazar,* 818 S.W.2d at 409. At this point, the issue is the facial validity of the prosecutor's explanation which will be deemed race neutral unless a discriminatory intent is inherent in the explanation. *Hernandez,* at ——, 111 S.Ct. at 1866, 114 L.Ed.2d at 406. The prosecutor was sworn as a witness and testified the reason the venireman was struck was because he was unemployed but not retired. The prosecutor elaborated by stating, "my concern was that he would be biased against a victim who had a considerable amount of money ... to invest and that ... if he [the victim] had that kind of money, it wouldn't hurt him to lose it...." Appellant argues other venireman who remained on the jury were also unemployed. Appellant also points to the limited questioning of the excluded venireman. Thus, Appellant asserts the State failed to overcome his prima facie case of racial discrimination.

At trial, Appellant responded to the prosecutor by arguing the State's reason was insufficient, as a matter of law, to overcome a *Batson* challenge because the excluded venireman was not thoroughly questioned, other "unemployed" veniremembers were seated on the jury and the excluded venireman was the only black on the panel.

**2.** Formerly, the accused had to show he was a member of the excused veniremember's race. However, this is no longer necessary. *See Rousseau v. State,* 824 S.W.2d 579, 584 n. 9 (Tex. Crim.App.1992).

**3.** Furthermore, once a prosecutor goes on record to offer a race neutral reason for the juror's exclusion, the preliminary issue of whether the accused established a prima facie showing of intentional discrimination becomes moot. *See Hernandez v. New York,* 500 U.S. ——, ——, 111 S.Ct. 1859, 1865–66, 114 L.Ed.2d 395, 405 (1991).

The State then introduced its copy of the venireman's juror information sheet into evidence. Subsequently, the defense introduced the information sheets of each of the veniremembers. After the State asserted its racially neutral reason for excluding the venireman, the burden of persuasion rested on Appellant's shoulders to prove by a preponderance of evidence the invalidity of the State's explanation. *See Salazar*, 818 S.W.2d at 409. Not having been persuaded, the trial court denied Appellant's *Batson* challenge, but it did not make any specific findings of fact or conclusions of law.

█ As previously stated, Appellant, if he is to be successful, must provide a record illustrating that the trial judge's findings are clearly erroneous. *Williams*, 804 S.W.2d at 101. Impliedly, the trial court concluded that the explanation of the State was one based upon racially neutral grounds. Since the best evidence from which to make this determination is the demeanor of the prosecutor, the trial judge is peculiarly situated to ascertain the credibility of the prosecutor; therefore, the court's ruling is given great deference. *Hernandez*, at ——, 111 S.Ct. at 1869, 114 L.Ed.2d at 409. In order to find this conclusion clearly erroneous, the record must indicate something more than that other members of the venire who were not struck from the jury possessed the same objectionable attribute referred to by the State in its explanation. *Cantu v. State*, No. 70,739, slip op. at 32, 1992 WL 116290 (Tex.Crim.App. June 3, 1992). Since the instant record is deficient in this regard, we lack sufficient information from which the trial court's conclusion can be categorized as clearly erroneous. Thus, we overrule Point of Error No. Four.

### Point of Error No. Five

█ Appellant challenges the propriety of the prosecutor's jury argument during guilt/innocence asserting that it invoked sympathy for the victim and was a request for vengeance. If an accused obtains an adverse ruling to a timely objection to jury argument which is beyond a summation of

and/or deduction from the evidence, an answer to opposing counsel's argument, or a plea for law enforcement, the trial court will be found to have erred. *Ledesma v. State*, 828 S.W.2d 560, 563 (Tex.App.—El Paso 1992, no pet. h.). The error will be deemed reversible if the argument was extreme, manifestly improper, violative of a mandatory statute or injected harmful new facts into the proceeding. *Id.*

█ Appellant's defensive theory was to remind the jury of the economic pressures upon business which require payment of overhead and expenses. Immediately following a summation of the evidence regarding Appellant's business expenses, the prosecutor stated: "Sometimes I think we are much too lenient and much too sympathetic towards people that don't deserve our sympathy, or don't—." Appellant's objection thereto was overruled. Appellant contends the argument impermissibly asked the jury to convict him on sentiment rather than the evidence. We disagree. The prosecutor's statement did not ask the jury for a specific result based upon community sentiment; thus, it is not within the category of improper argument. *Motley v. State*, 773 S.W.2d 283, 293 (Tex.Crim.App.1989). As a result, Point of Error No. Five is overruled.

### Point of Error No. Six

█ Appellant challenges the assessment of 600 hours of community service as directed by the adult probation officer as a condition of probation. Appellant argues that the terms of probation violate Tex. Code Crim.Pro.Ann. art. 42.12, §§ 11(a)(10) and 17(a) (Vernon Supp.1992). In support of his position, Appellant cites *Tovar v. State*, 777 S.W.2d 481 (Tex.App.—Corpus Christi 1989, pet. ref'd), which construed Sections 6(a)(10) and 10A(c) of the Code of Criminal Procedure as written at the time of Tovar's conviction. The Corpus Christi appellate court found that the trial court's designation of the Adult Probation Department as the director of the accused's community service work did not comply with the statutes as written. That opinion is no

longer controlling for the following reasons.

The Corpus Christi court's opinion was issued on August 31, 1989. *See Tovar*, 777 S.W.2d at 481. Significant changes to Article 42.12 became effective on the next day—September 1, 1989. Included within these amendments was the addition of Section 10(d) which reads, in relevant part:

A court that places a defendant on probation may authorize the probation officer supervising the probationer ... to modify the conditions of probation for the limited purpose of transferring the probationer to different programs within the probation program.[4]

Furthermore, the two sections construed in *Tovar* have been redesignated and revised by these and other numerous and never ending amendments to Article 42.12. Section 6(a)(10)[5] is now Section 11(a)(10),[6] which provides:

Terms and conditions of probation may include, but shall not be limited to, the conditions that the probationer shall:

. . . . .

Participate, for a time specified by the court in any community-based program, including a community-service work program *designated* by the court; [Emphasis added].

Moreover, the former Section 10A(c)[7] is very similar to the current Section 17(a)[8] which provides:

If the court places a defendant on probation, the court *may* require, as a condition of the probation, that the defendant work a specified number of hours at a community service project or projects for an organization or organizations *named* in the court's order.... [Emphasis added].

Appellant contends the language referring to the trial court's designation or naming of the projects is mandatory. We disagree.

■ Although both Sections 11(a)(10) and 17(a) state that the court should make a decision regarding the community-service work to be done, neither statute expressly mandates such action. If a statute is susceptible of two or more constructions, the provision will be interpreted in the way which best effectuates the legislative intent. *Booker v. State*, 808 S.W.2d 141, 144 (Tex.App.—El Paso 1991, no pet.). To best determine this intent, we are guided by the directions of the Code of Construction Act as found in Tex.Gov't Code Ann. §§ 311.001 et seq. (Vernon 1988). Section 311.023 provides, in part, that we are to consider legislative history and the former statutes. *See Booker*, 808 S.W.2d at 145. Additionally, Section 311.025(b) states that amendments that are enacted to the same statute at the same session of the legislature (that do not refer to each other) are to be harmonized so that effect may be given to each.

As previously noted in the footnotes above, Sections 10(d), 11(a)(10) and 17(a) were each created or recodified in the same legislative enactment. Neither of these provisions, however, refer to one another. Consequently, they are to be harmonized so as to give effect to each. Significantly, the recodification of the former Section 10A(c) into the present Section 17(a) notably replaced the word "shall" with "may" as

---

4. Section 10(e) was also added at this time which provided the method and manner for the officer to notify both the probationer and the sentencing court of the modified conditions. *See* Act of June 15, 1989, ch. 785, § 4.17, 1989 Tex.Gen.Laws 3471, 3504.

5. At the time *Tovar* was written, the section provided that a convicted person may "[p]articipate for a time specified by the court and subject to the same conditions imposed on community-service probationers by Section 10A(c), (d), (g), and (h) of this article, in any community based program...." *See Tovar*, 777 S.W.2d at 496.

6. *See* Act of June 15, 1989, ch. 785, § 4.17, 1989 Tex.Gen. Laws 3471, 3504–05.

7. This section stated, in relevant part, that if the "court places a defendant on community-service restitution probation, the court *shall* require, as a condition of the probation, that the defendant work a specified number of hours at a specified community-service project for an organization named in the court's order." *See Tovar*, 777 S.W.2d at 496. [Emphasis added].

8. *See* Act of June 15, 1989, ch. 785, § 4.17, 1989 Tex.Gen.Laws 3471, 3511 *as amended by* Act of June 18, 1990, ch. 25, § 9, 1990 Tex.Gen.Laws 108, 110 (71st Legislature, Sixth Called Session).

previously emphasized. *See* Act of June 15, 1989, ch. 785, § 4.17, 1989 Tex.Gen. Laws 3471, 3511. *See also Id.* at 3522 (elimination of Section 10A(c)). Moreover, the most recent change to Section 17(a) was a deletion of the word "specified" from the following excerpt: "at a *specified* community service project...." *See* Act of June 18, 1990, ch. 25, § 9, 1990 Tex.Gen. Laws 108, 110 (71st Legislature, Sixth Called Session).

Having applied the dictates of the Code of Construction Act to construe properly each of the applicable sections to Article 42.12 of the Texas Code of Criminal Procedure, we conclude that the provisions of Sections 11(a)(10) and 17(a) which state the community service project should be either "designated by the court" or "named in the court's order," respectively, are not mandatory. The addition of Sections 10(d) and 10(e) clearly illustrates the legislature's intent to lessen the burden upon trial courts, if so desired, regarding the supervision, management and modification of community-service programs when utilized in the terms of probation. When considered harmoniously with the stated purpose of the Act of June 15, 1989 which, in relevant part, gives full control to a trial court to regulate its own duties: "to place wholly within the State courts of appropriate jurisdiction the responsibility for determining ... the conditions of probation, and the supervision of probationers...." *See* Act of June 15, 1989, ch. 785, § 4.17, 1989 Tex. Gen.Laws 3471, 3498. Sections 11(a)(10) and 17(a) of Article 42.12 of the Code of Criminal Procedure authorize the trial court to designate a particular community-service program or project in the order placing a defendant on probation. Sections 10(d) and 10(e) of the same article permit the trial court to authorize the probation officer to modify the conditions of probation for the purpose of transferring the probationer to different programs within the overall probation program. It is readily apparent that the legislature intended to give the trial court broad powers, whether exercised directly or through a probation officer, with regard to the assignment of probationers to community-service programs. Therefore, we hold that under the present law, the trial court need not designate a specific community-service program in its order determining the terms and conditions of probation. It may, as an alternative, authorize the probation department through its officers to designate appropriate community-service programs or projects for the probationer to discharge his obligation, subject to the requirements of Section 10(e) relating to notice to the probationer and the right to have the trial court review the modification. As a result, we overrule Point of Error No. Six.

Having overruled each of Appellant's points of error, we affirm the judgment of the trial court.