

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-76,302

### EX PARTE WILLIAM LEE NISWANGER, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### FROM FREESTONE COUNTY

MEYERS, J., delivered the opinion of the Court, in which KELLER, P.J., and KEASLER, HERVEY, and COCHRAN, JJ., joined. WOMACK, J., filed a concurring opinion. PRICE, J., filed a dissenting opinion, in which JOHNSON, J., joined. JOHNSON, J., filed a dissenting opinion.

### O P I N I O N

Applicant was charged with impersonating a public servant under Section 37.11(a)

of the Texas Penal Code.[1]  He pled guilty in exchange for a sentence of ten years'

---

[1]Section 37.11(a) reads as follows:
(a) A person commits an offense if he:
> (1) impersonates a public servant with intent to induce another to submit to his pretended official authority or to rely on his pretended official acts; or
> (2) knowingly purports to exercise any function of a public servant or of a public office, including that of a judge and court, and the position or office through which he purports to exercise a function of a public servant or public office has no lawful existence under the constitution or laws of this state or of the United States.

confinement. Applicant filed a pro se application for writ of habeas corpus, claiming that his plea was involuntary because his attorney was ineffective for failing to investigate the facts of his offense. The trial court entered findings of fact and conclusions of law recommending that relief be denied. We filed and set this application for writ of habeas corpus. We will hold that Counsel was not ineffective, and we will deny relief.

## I. FACTS

Applicant was operating a small display booth in the parking lot of a Brookshire Brothers grocery store in Teague, Texas. He spoke with shoppers and distributed fliers to promote the sale of raffle tickets and to raise money for a charity benefitting firefighters and the families of soldiers serving in Iraq. Due to a complaint from the mayor about Applicant's activities,[2] Officer Shawn Solly approached Applicant to investigate whether he had the permit required to operate his table. Applicant explained that he had permission from the store manager to sell raffle tickets in the parking lot. After discussing the charity, Applicant asked the officer if she would like to buy a ticket. In response, she requested Applicant's identification. As he was presenting his driver's license, a Grandview Volunteer Fire Department badge attached to his wallet became visible. Officer Solly asked to see the identification card for the badge, which Applicant

---

[2]The mayor filed a complaint with Officer Solly after shopping at the Brookshire Brothers grocery store. According to the police incident report, she stated that Applicant was soliciting donations for a fund benefitting firefighters and soldiers and that he did not have the required permit to do so.

displayed.[3]  She then asked if Applicant was a fireman, and he said, "Yes."[4]

Applicant was subsequently arrested and charged with the felony offense of impersonating a public servant under Section 37.11(a)(1) of the Texas Penal Code, enhanced by six prior convictions.[5]  Notably, the indictment alleged that Applicant

> did then and there impersonate a public servant, namely, a fireman, with intent to induce [Officer] Shawn Solly to submit to the pretended official authority of the defendant or to rely on the pretended official acts of the defendant by showing a badge and identification to induce the purchase of raffle tickets for fire fighter fund.

Applicant was appointed counsel.  During their initial meeting, Applicant described the events and explained his relationship with the Grandview Volunteer Fire Department.  A month later, Counsel contacted Applicant, provided him with a copy of the police incident report, and informed him that the county attorney had offered a 15-year plea deal.  Applicant rejected the offer because Counsel told him that he had not yet

---

[3]There is some discrepancy between the police incident report and Applicant's affidavit as to the order and manner in which the driver's license, badge, and identification card were presented or became visible.

[4]Per the police incident report, the Grandview Volunteer Fire Department's treasurer stated that records did not show Applicant to be a volunteer.  Still, Applicant maintains that, while he was not on an active roster at the time of the alleged offense, he had previously been a volunteer fireman at the Department and was properly trained as such.  He had to remove himself from the active roster for health reasons.

[5]Applicant was convicted of the felony of credit card abuse and two counts of the felony of forgery in August 1987.  Applicant was later convicted of additional felony offenses of forgery in July 1989, October 1992, and February 1993.

examined the State's case or the law related to the charge.[6] The following month, Counsel again contacted Applicant, this time presenting a 10-year plea deal. Counsel advised Applicant that the State's case was "rock solid," that he was "sure" Applicant would be convicted, and that, with his prior record, Applicant would receive a sentence of 25 years to life. Relying on these statements, Applicant pled guilty to the offense in exchange for 10 years in the Department of Criminal Justice-Institutional Division.

Applicant filed a pro se application for writ of habeas corpus, claiming that his guilty plea was involuntary due to Counsel's failure to investigate the facts of his offense. The trial court entered findings of fact and conclusions of law, recommending that relief be denied. We ordered that this application be filed and set for submission to determine whether Counsel was ineffective for failing to properly investigate whether the facts of this case would support a conviction for impersonating a public servant, and we requested that both parties brief these issues. The trial court then appointed an attorney to represent Applicant in all proceedings thereafter.

In his memorandum of law and brief in support of the writ application, Applicant alleges Counsel's deficient conduct to be as follows:

> (1). Counsel coached a guilty plea, when a reasonably competent lawyer would have known that Applicant's claim of being a volunteer fireman was not a false personation within the meaning of Sec. 37.11(a) Tex.Pen.Code.

---

[6]This statement comes from Applicant's affidavit. Counsel, in his affidavit, claims that by this meeting date, he had reviewed the county attorney's file and noted the specifics of each enhancement allegation (e.g., date, location, offense, and sentence of each alleged conviction). He had also copied and reviewed the police incident report.

(2). Counsel coached a guilty plea, when a reasonably competent lawyer would have known that a "..Fireman.." is not a public servant withing [sic] the meaning of Sec. 37.11(a) Tex.Pen.Code.

(3). Counsel coached a guilty plea, when a reasonably competent lawyer would have known, that the promotion of a sale of raffle tickets is not an official act within the meaning of Sec. 37.11(a) Tex.Pen.Code.

(4). Counsel coached a guilty plea, when a reasonably competent lawyer would have known that the indictment failed to alleged [sic] that the claim of being a volunteer fireman was in any way levied to compel the purchase of a raffle ticket. as required by Sec. 37.11 (a) Tex.Pen.Code.

Applicant asserts that had he known that the indictment failed to allege a set of facts that amounted to a criminal act or that promoting the sale of raffle tickets was not illegal, he would not have pled guilty and would have insisted on going to trial.

## II. CASELAW

A defendant has a Sixth Amendment right to effective assistance of counsel in plea proceedings. U.S. CONST. amend. VI; *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010). "No plea of guilty or plea of nolo contendere shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary." TEX. CODE CRIM. PROC. ANN. art. 26.13(b). A guilty plea is not considered knowing and voluntary if it is made because of ineffective assistance of counsel. *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980) (en banc).

To determine whether to grant habeas corpus relief for ineffective assistance of counsel, Texas courts apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires the applicant to establish two components. First, the applicant

must show that his attorney's performance was deficient, meaning it "fell below an objective standard of reasonableness" under prevailing professional norms and according to the necessity of the case. *Id.* at 687-88; *Ex parte Morrow,* 952 S.W.2d 530, 536 (Tex. Crim. App. 1997) (en banc) (asking "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases"). Because there "are countless ways to provide effective assistance in any given case," a reviewing court must be highly deferential and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quotations omitted).

Second, the applicant must demonstrate that he was prejudiced by his attorney's performance—"there is a reasonable probability[7] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. For claims related to the entering of a plea, the applicant satisfies the prejudice prong by showing a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). Still, the applicant "need not show that his case would have received a more favorable disposition had he gone to trial." *Johnson v. State*, 169 S.W.3d 223, 231 (Tex. Crim. App. 2005).

---

[7]"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Counsel's function "is to make the adversarial testing process work in the particular case." *Strickland*, 466 U.S. at 690. Accordingly, competent advice requires that an attorney conduct independent legal and factual investigations sufficient to enable him to have a firm command of the case and the relationship between the facts and each element of the offense. *Id.* at 691; *see Ex parte Briggs*, 187 S.W.3d 458, 467 (Tex. Crim. App. 2005).

### III. ANALYSIS

The applicant has the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Allegations of ineffectiveness must be based on the record, and the presumption of a sound trial strategy cannot be overcome absent evidence in the record of the attorney's reasons for his conduct. *Busby v. State*, 990 S.W.2d 263, 269 (Tex. Crim. App. 1999). The reviewing court must look to the totality of the representation, and its decision must be based on the facts of the particular case, viewed at the time of counsel's conduct so as to eliminate hindsight bias. *Strickland*, 466 U.S. at 690. The findings of the trial court do not bind this Court in a habeas corpus proceeding, and this Court may make contrary findings when the record will not support the trial court's findings. *Ex parte Reed,* 271 S.W.3d 698, 727 (Tex. Crim. App. 2008); *Ex parte Morrow,* 952 S.W.2d at 534.

For the first prong of the *Strickland* test, Applicant argues that Counsel's

performance was deficient because Counsel persuaded him to enter a plea of guilty when a reasonably competent attorney would have recognized that the indictment failed to allege an offense for which Applicant could be prosecuted.

An attorney advises a client based upon an evaluation of numerous factors and considerations. Here, Counsel had to balance, *inter alia*, two important issues: the uncertainty of trial and the possible range of punishment. Counsel could not have known for certain what facts would be developed at trial. The record here is relatively undeveloped. Also, the key documents that would be offered at trial (the police incident report and Applicant's affidavit) dispute the facts of the case. And Counsel's affidavit indicates that there was no way to further investigate the facts because it is essentially a "policeman said, defendant said" case. Although many of the disputed facts are seemingly minor details of the encounter between Applicant and Officer Solly, these facts could play an important role for both sides in this case. For example, the order and manner in which Applicant's driver's license, badge, and identification card were presented or became visible are important to establishing whether there was an official or overt act and whether there was a connection between the person impersonated and the official act. Yet, because they cannot be recreated or investigated more, both Counsel and the State would have to rely on the conflicting recounts of Applicant and Officer Solly for these facts. In such fact-based circumstances, an attorney cannot know what specifics will develop at trial or how the jury will decide.

In contrast, Counsel knew for certain that the state would enhance Applicant's sentence to a minimum of 25 years upon conviction. As provided in the indictment, Applicant had six prior felony convictions, some of which were sequential. Thus, per the habitual offender provision of the Penal Code, if he was found guilty of impersonating a public servant and findings of true were made as to the habitual enhancement paragraphs, Applicant would be punished by imprisonment for 25 years to life. TEX. PENAL CODE ANN. § 12.42(d).[8] Given these two important factors, we believe that it was reasonable for Counsel to determine it prudent to advise a guilty plea in exchange for 10 years' imprisonment, 15 years less than the minimum sentence that could be imposed if he was found guilty at trial.

Further, the record supports that Applicant was agreeable to Counsel's plea advice and voluntarily followed the advice. When the trial court admonished him regarding the consequences of his plea, Applicant affirmatively responded that he understood the charges against him and Counsel's explanation of his rights and that he was satisfied with Counsel's representation. Applicant also told the trial court that he was pleading guilty because he was "guilty and for no other reason," that he was doing so of his "own free will," and that no threats or promises were forcing him to plead guilty.

---

[8]Texas Penal Code Section 12.42(d) provides that ". . . if it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years."

An argument could be made that, before advising a guilty plea, Counsel should have attacked the indictment because it failed to allege an offense for which Applicant could be prosecuted. Applicant raises several possible issues that could have been addressed in a motion to quash the indictment: the indictment may have failed to allege an act that was an impersonation,[9] failed to allege that a public servant was being impersonated,[10] failed to allege any act accompanying the impersonation that could be considered an official act,[11] and failed to allege that the claim of being a volunteer fireman was in any way used to compel the purchase of a raffle ticket.[12] But to hold

---

[9]"To impersonate" is generally understood to mean "to pretend to be another person." One who honestly believes that he is entitled to the title of the office under which he acts lacks the requisite intent and, thus, cannot be found guilty under Section 37.11(a). *See Strahmann v. State*, 70 S.W.2d 709, 709 (Tex. Crim. App. 1934) (interpreting the predecessor statute). If Applicant's association with the fire department entitled him to claim that he was a fireman or if his belief that he was a volunteer fireman caused him to act without pretense, he could not have been impersonating, and the indictment would have failed to allege a crime for which Applicant could be prosecuted.

[10]The indictment alleges that the public servant impersonated by Applicant was a "fireman," and Applicant and Counsel debate whether such fits within the definition of "public servant" as used in Section 37.11(a).

[11]To allege a crime under Section 37.11(a)(1), an indictment must provide that the defendant had been engaged in some overt action in an official capacity that is more than merely showing official identification. *Tovar v. State*, 777 S.W.2d 481, 489 (Tex. App.—Corpus Christi 1989, pet. ref'd); *see Boyett v. State*, 368 S.W.2d 769, 771 (Tex. Crim. App. 1963). The indictment alleges only two acts: (1) the display of the badge and identification and (2) the sale of raffle tickets. Because the first is not sufficient by itself to constitute a crime under the statute, whether the second is an official act is critical in determining if the indictment alleges a crime.

[12] Applicant contends that "the offer to sell a raffle ticket, is not an inducement within the meaning of Sec. 37.11(a), Tex.Pen.Code. where there is no compulsory quality to the offer." He argues that there was "no association between the identification of being a volunteer fire man and the offer to sell a raffle ticket, to the extent that one would be compelled to comply"—"the only tie-in between the two was the presentation of identification when requested."

Counsel ineffective in this case for failure to attack the indictment would be inconsistent with our decision in *Benoit v. State*, 561 S.W.2d 810 (Tex. Crim. App. 1977), *overruled on other grounds by Harrison v. State*, 187 S.W.3d 429 (Tex. Crim. App. 2005).[13]

In *Benoit*, the appellant entered pleas of guilty to four separate indictments charging delivery of controlled substances and entered a true plea to the same offenses in a probation revocation proceeding. The appellant faced the possibility of receiving two life sentences, two ten-year sentences, and a five-year sentence, but the defense counsel negotiated a plea agreement for five concurrent five-year sentences. We determined that two indictments for delivery of codeine were fatally defective because they did not allege the amount or penalty group involved and that the indictment for delivery of diazepam did not charge an offense under the laws of Texas because it was not until after the time of the offense that diazepam by name could be dispensed by prescription only. Nonetheless, even though three of the four indictments were defective, we held that the attorney's failure to challenge the indictments before advising a plea was not ineffective under the legal duty test or the reasonably effective assistance standard, the precursors to the *Strickland* standard. To explain, we stated,

> Even if counsel had advanced the argument that the indictments were defective on the grounds assigned in these appeals, the State could have re-indicted correcting

_____

[13]Although this case was decided before the *Strickland* standard was established, the Supreme Court stated that "the standards articulated today do not require reconsideration of ineffectiveness claims rejected under different standards . . . the minor differences in the lower courts' precise formations of the performance standard are insignificant . . . ." *Strickland*, 466 U.S. 696-97.

the defects.[14] Counsel may well have considered this factor when he evaluated appellant's situation and determined to accept the plea bargain of five concurrent five years. This may have been the wiser course than facing the uncertainty of three re-indictments and the punishments that could then be inflicted.

*Id.* at 818.

Here, Counsel theoretically could have objected to the indictment. However, as we acknowledged in *Benoit*, the State would have likely responded by re-indicting Applicant, correcting the defects. Counsel could have filed a motion to quash on the ground that the raffle ticket sale was not an official act. Given the unsettled nature of the relevant law, it is uncertain how the court would have ruled on the motion.[15] If the court

---

[14]For example, "the State could have easily re-indicted for delivery of diazepam alleging that it was a tranquilizer and the plea bargain may then have been no longer available." *Benoit*, 561 S.W.2d at 818.

[15]*See supra* note 11. To violate Section 37.11(a), there must be an overt act in the pretended official capacity. *Tovar*, 777 S.W.2d at 489. Applicant contends that the common understanding of "official act" is the product or result of an official decree or command from one who is empowered to impose a duty or restraint upon the general public. Thus, he argues that the sale of raffle tickets cannot be an "official act" because it "has absolutely nothing to do with civil rule or government." However, the result does not seem to be so clear. The Texas Penal Code defines "act" as "a bodily movement . . . and includes speech." TEX. PENAL CODE § 1.07(a)(1). "Official act" has not been defined, but the act need not be within the legal power of the office the impostor purports to fill because the underlying purpose of the statute is to protect the public and maintain its trust in law enforcement. *Boyett*, 368 S.W.2d at 771; *Walker v. State*, 229 S.W. 853, 854 (Tex. Crim. App. 1921); *Rice v. State*, 195 S.W.3d 876, 881-82 (Tex. App.—Dallas 2006, pet. ref'd); *Dietz v. State*, 62 S.W.3d 335, 340 (Tex. App.—Austin 2001, pet. ref'd). The sale of raffle tickets, coupled with Applicant's assertions that he was a fireman and the display of the badge, might rise to the level of an "official act" in the context of Section 37.11(a). For cases discussing official or overt acts, see, e.g., *Lewis v. State*, No. 01-96-01121-CR, 2001 Tex. App. LEXIS 51 (Tex. App.—Houston [1st Dist.] Jan. 4, 2001, no pet.) (determining that there was a sufficient act and display of intent to uphold a conviction for impersonating a public servant where the appellant attempted to gain access into a halfway house by identifying himself as being with the "Justice Department," presenting an identification card indicating such, and asserting that he had a right to see his friend); *McCoy v. State*, No. 14-98-01011-CR, 1999 Tex. App. LEXIS 8392 (Tex. App.—Houston [14th Dist.] Nov. 10, 1999, pet. ref'd) (highlighting the

granted the motion, then the indictment would have failed to allege a crime, like the

*Benoit* indictments for delivery of diazepam. And if the court denied the motion, the

prosecution would have likely continued, and the 10-year plea agreement might not have

been available to Applicant, meaning that he would be facing the possibility of 25 years

to life imprisonment upon conviction. Like the attorney in *Benoit*, Counsel could have

considered these factors and reasonably decided to advise Applicant to enter a guilty plea.

Accordingly, we believe that Counsel's performance fell within the range of

professional competence. Applicant has not overcome the strong presumption that

counsel's conduct might be sound strategy and has, therefore, failed to prove ineffective

assistance of counsel pursuant to *Strickland*. Because Applicant has failed to demonstrate

error, we need not discuss whether Applicant was prejudiced by Counsel's performance.

## IV. CONCLUSION

We conclude that Applicant has not proven by a preponderance of the evidence

that Counsel's representation fell below the objectively reasonable standard. Therefore,

---

importance of speech within the definition of "overt act" and determining that the evidence was sufficient to show a false assumption of a public servant's role and an overt action in that capacity where the appellant, talking to the driver of a neighboring car, claimed to be a police officer, showed a badge, and threatened to shoot the other driver if he continued to talk to him); *Marshall v. State*, No. 14-95-01183-CR, 1996 Tex. App. LEXIS 3836 (Tex. App.—Houston [14th Dist.] Aug. 29, 1996, writ ref'd) (emphasizing that speech was within the definition of "overt act" and upholding a conviction for impersonating a public servant where the appellant, stopped for speeding, repeatedly claimed that he was a county deputy and had law-enforcement type accessories on his car); *Tovar*, 777 S.W.2d 481 (holding that the appellant unlawfully arrested a security guard for impersonating a public official when the guard asked appellant to retrieve his weapon but did not identify himself as a police officer and was dressed in a guard's uniform, rather than that of a police officer).

Applicant failed to demonstrate that his plea of guilty was unknowingly or involuntarily made because of ineffective assistance of trial counsel. Relief is denied.

Meyers, J.

Delivered: March 16, 2011

Publish