**Ex parte William Lee NISWANGER,
Applicant.**

No. AP–76302.

Court of Criminal Appeals of Texas.

March 16, 2011.

Stan Schwieger, Waco, for Appellant.

Michael D. Stratton, Asst. County Atty., Fairfield, Jeffrey L. Van Horn, State's Attorney, Austin, for State.

## OPINION

MEYERS, J., delivered the opinion of the Court, in which KELLER, P.J., and KEASLER, HERVEY, and COCHRAN, JJ., joined.

Applicant was charged with impersonating a public servant under Section 37.11(a) of the Texas Penal Code.[1] He pled guilty in

---

1. Section 37.11(a) reads as follows:
   (a) A person commits an offense if he:

   (1) impersonates a public servant with intent to induce another to submit to his

exchange for a sentence of ten years' confinement. Applicant filed a pro se application for writ of habeas corpus, claiming that his plea was involuntary because his attorney was ineffective for failing to investigate the facts of his offense. The trial court entered findings of fact and conclusions of law recommending that relief be denied. We filed and set this application for writ of habeas corpus. We will hold that Counsel was not ineffective, and we will deny relief.

## I. FACTS

Applicant was operating a small display booth in the parking lot of a Brookshire Brothers grocery store in Teague, Texas. He spoke with shoppers and distributed fliers to promote the sale of raffle tickets and to raise money for a charity benefitting firefighters and the families of soldiers serving in Iraq. Due to a complaint from the mayor about Applicant's activities,[2] Officer Shawn Solly approached Applicant to investigate whether he had the permit required to operate his table. Applicant explained that he had permission from the store manager to sell raffle tickets in the parking lot. After discussing the charity, Applicant asked the officer if

she would like to buy a ticket. In response, she requested Applicant's identification. As he was presenting his driver's license, a Grandview Volunteer Fire Department badge attached to his wallet became visible. Officer Solly asked to see the identification card for the badge, which Applicant displayed.[3] She then asked if Applicant was a fireman, and he said, "Yes."[4]

Applicant was subsequently arrested and charged with the felony offense of impersonating a public servant under Section 37.11(a)(1) of the Texas Penal Code, enhanced by six prior convictions.[5] Notably, the indictment alleged that Applicant

did then and there impersonate a public servant, namely, a fireman, with intent to induce [Officer] Shawn Solly to submit to the pretended official authority of the defendant or to rely on the pretended official acts of the defendant by showing a badge and identification to induce the purchase of raffle tickets for fire fighter fund.

Applicant was appointed counsel. During their initial meeting, Applicant described the events and explained his relationship with the Grandview Volunteer

pretended official authority or to rely on his pretended official acts; or
(2) knowingly purports to exercise any function of a public servant or of a public office, including that of a judge and court, and the position or office through which he purports to exercise a function of a public servant or public office has no lawful existence under the constitution or laws of this state or of the United States.

2. The mayor filed a complaint with Officer Solly after shopping at the Brookshire Brothers grocery store. According to the police incident report, she stated that Applicant was soliciting donations for a fund benefitting firefighters and soldiers and that he did not have the required permit to do so.

3. There is some discrepancy between the police incident report and Applicant's affidavit

as to the order and manner in which the driver's license, badge, and identification card were presented or became visible.

4. Per the police incident report, the Grandview Volunteer Fire Department's treasurer stated that records did not show Applicant to be a volunteer. Still, Applicant maintains that, while he was not on an active roster at the time of the alleged offense, he had previously been a volunteer fireman at the Department and was properly trained as such. He had to remove himself from the active roster for health reasons.

5. Applicant was convicted of the felony of credit card abuse and two counts of the felony of forgery in August 1987. Applicant was later convicted of additional felony offenses of forgery in July 1989, October 1992, and February 1993.

Fire Department. A month later, Counsel contacted Applicant, provided him with a copy of the police incident report, and informed him that the county attorney had offered a 15–year plea deal. Applicant rejected the offer because Counsel told him that he had not yet examined the State's case or the law related to the charge.[6] The following month, Counsel again contacted Applicant, this time presenting a 10–year plea deal. Counsel advised Applicant that the State's case was "rock solid," that he was "sure" Applicant would be convicted, and that, with his prior record, Applicant would receive a sentence of 25 years to life. Relying on these statements, Applicant pled guilty to the offense in exchange for 10 years in the Department of Criminal Justice–Institutional Division.

Applicant filed a pro se application for writ of habeas corpus, claiming that his guilty plea was involuntary due to Counsel's failure to investigate the facts of his offense. The trial court entered findings of fact and conclusions of law, recommending that relief be denied. We ordered that this application be filed and set for submission to determine whether Counsel was ineffective for failing to properly investigate whether the facts of this case would support a conviction for impersonating a public servant, and we requested that both parties brief these issues. The trial court then appointed an attorney to represent Applicant in all proceedings thereafter.

In his memorandum of law and brief in support of the writ application, Applicant alleges Counsel's deficient conduct to be as follows:

(1). Counsel coached a guilty plea, when a reasonably competent lawyer would have known that Applicant's claim

of being a volunteer fireman was not a false personation within the meaning of Sec. 37.11(a) Tex.Pen.Code.

(2). Counsel coached a guilty plea, when a reasonably competent lawyer would have known that a "...Fireman..." is not a public servant withing [sic] the meaning of Sec. 37.11(a) Tex. Pen.Code.

(3). Counsel coached a guilty plea, when a reasonably competent lawyer would have known, that the promotion of a sale of raffle tickets is not an official act within the meaning of Sec. 37.11(a) Tex.Pen.Code.

(4). Counsel coached a guilty plea, when a reasonably competent lawyer would have known that the indictment failed to alleged [sic] that the claim of being a volunteer fireman was in any way levied to compel the purchase of a raffle ticket. as required by Sec. 37.11(a) Tex.Pen.Code.

Applicant asserts that had he known that the indictment failed to allege a set of facts that amounted to a criminal act or that promoting the sale of raffle tickets was not illegal, he would not have pled guilty and would have insisted on going to trial.

## II. CASELAW

A defendant has a Sixth Amendment right to effective assistance of counsel in plea proceedings. U.S. Const. amend. VI; *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex.Crim.App.2010). "No plea of guilty or plea of nolo contendere shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary." Tex.Code Crim. Proc. Ann. art. 26.13(b). A guilty plea is not considered

---

**6.** This statement comes from Applicant's affidavit. Counsel, in his affidavit, claims that by this meeting date, he had reviewed the county attorney's file and noted the specifics of each

enhancement allegation (e.g., date, location, offense, and sentence of each alleged conviction). He had also copied and reviewed the police incident report.

knowing and voluntary if it is made because of ineffective assistance of counsel. *Ex parte Burns,* 601 S.W.2d 370, 372 (Tex. Crim.App.1980) (en banc).

■■■ To determine whether to grant habeas corpus relief for ineffective assistance of counsel, Texas courts apply the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires the applicant to establish two components. First, the applicant must show that his attorney's performance was deficient, meaning it "fell below an objective standard of reasonableness" under prevailing professional norms and according to the necessity of the case. *Id.* at 687–88, 104 S.Ct. 2052; *Ex parte Morrow,* 952 S.W.2d 530, 536 (Tex.Crim.App.1997) (en banc) (asking "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases"). Because there "are countless ways to provide effective assistance in any given case," a reviewing court must be highly deferential and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052 (quotations omitted).

■■■ Second, the applicant must demonstrate that he was prejudiced by his attorney's performance—"there is a reasonable probability [7] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. For claims related to the entering of a plea, the applicant satisfies the prejudice prong by showing a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 58–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Still, the applicant "need not show that his case would have received a more favorable disposition had he gone to trial." *Johnson v. State,* 169 S.W.3d 223, 231 (Tex.Crim.App.2005).

■■■ Counsel's function "is to make the adversarial testing process work in the particular case." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. Accordingly, competent advice requires that an attorney conduct independent legal and factual investigations sufficient to enable him to have a firm command of the case and the relationship between the facts and each element of the offense. *Id.* at 691, 104 S.Ct. 2052; *see Ex parte Briggs,* 187 S.W.3d 458, 467 (Tex. Crim.App.2005).

### III. ANALYSIS

■■■ The applicant has the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim. App.1999). Allegations of ineffectiveness must be based on the record, and the presumption of a sound trial strategy cannot be overcome absent evidence in the record of the attorney's reasons for his conduct. *Busby v. State,* 990 S.W.2d 263, 269 (Tex.Crim.App.1999). The reviewing court must look to the totality of the representation, and its decision must be based on the facts of the particular case, viewed at the time of counsel's conduct so as to eliminate hindsight bias. *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. The findings of the trial court do not bind this Court in a habeas corpus proceeding, and this Court may make contrary findings when the record will not support the trial court's

---

7. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

findings. *Ex parte Reed,* 271 S.W.3d 698, 727 (Tex.Crim.App.2008); *Ex parte Morrow,* 952 S.W.2d at 534.

For the first prong of the *Strickland* test, Applicant argues that Counsel's performance was deficient because Counsel persuaded him to enter a plea of guilty when a reasonably competent attorney would have recognized that the indictment failed to allege an offense for which Applicant could be prosecuted.

An attorney advises a client based upon an evaluation of numerous factors and considerations. Here, Counsel had to balance, *inter alia,* two important issues: the uncertainty of trial and the possible range of punishment. Counsel could not have known for certain what facts would be developed at trial. The record here is relatively undeveloped. Also, the key documents that would be offered at trial (the police incident report and Applicant's affidavit) dispute the facts of the case. And Counsel's affidavit indicates that there was no way to further investigate the facts because it is essentially a "policeman said, defendant said" case. Although many of the disputed facts are seemingly minor details of the encounter between Applicant and Officer Solly, these facts could play an important role for both sides in this case. For example, the order and manner in which Applicant's driver's license, badge, and identification card were presented or became visible are important to establishing whether there was an official or overt act and whether there was a connection between the person impersonated and the official act. Yet, because they cannot be recreated or investigated more, both Counsel and the State would have to rely on the conflicting recounts of Applicant and Officer Solly for these facts. In such fact-based circumstances, an attorney cannot know what specifics will develop at trial or how the jury will decide.

In contrast, Counsel knew for certain that the state would enhance Applicant's sentence to a minimum of 25 years upon conviction. As provided in the indictment, Applicant had six prior felony convictions, some of which were sequential. Thus, per the habitual offender provision of the Penal Code, if he was found guilty of impersonating a public servant and findings of true were made as to the habitual enhancement paragraphs, Applicant would be punished by imprisonment for 25 years to life. TEX. PENAL CODE ANN. § 12.42(d).[8] Given these two important factors, we believe that it was reasonable for Counsel to determine it prudent to advise a guilty plea in exchange for 10 years' imprisonment, .15 years less than the minimum sentence that could be imposed if he was found guilty at trial.

Further, the record supports that Applicant was agreeable to Counsel's plea advice and voluntarily followed the advice. When the trial court admonished him regarding the consequences of his plea, Applicant affirmatively responded that he understood the charges against him and Counsel's explanation of his rights and that he was satisfied with Counsel's representation. Applicant also told the trial court that he was pleading guilty because he was "guilty and for no other reason," that he was doing so of his "own free will," and that no threats or promises were forcing him to plead guilty.

---

8. Texas Penal Code Section 12.42(d) provides that "... if it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years."

■ An argument could be made that, before advising a guilty plea, Counsel should have attacked the indictment because it failed to allege an offense for which Applicant could be prosecuted. Applicant raises several possible issues that could have been addressed in a motion to quash the indictment: the indictment may have failed to allege an act that was an impersonation,[9] failed to allege that a public servant was being impersonated,[10] failed to allege any act accompanying the impersonation that could be considered an official act,[11] and failed to allege that the claim of being a volunteer fireman was in any way used to compel the purchase of a raffle ticket.[12] But to hold Counsel ineffective in this case for failure to attack the indictment would be inconsistent with our decision in *Benoit v. State,* 561 S.W.2d 810 (Tex.Crim.App.1977), *overruled on other grounds by Harrison v. State,* 187 S.W.3d 429 (Tex.Crim.App.2005).[13]

In *Benoit,* the appellant entered pleas of guilty to four separate indictments charging delivery of controlled substances and entered a true plea to the same offenses in a probation revocation proceeding. The appellant faced the possibility of receiving two life sentences, two ten-year sentences, and a five-year sentence, but the defense counsel negotiated a plea agreement for five concurrent five-year sentences. We determined that two indictments for delivery of codeine were fatally defective because they did not allege the amount or penalty group involved and that the indictment for delivery of diazepam did not charge an offense under the laws of Texas because it was not until after the time of the offense that diazepam by name could be dispensed by prescription only. None-

9. "To impersonate" is generally understood to mean "to pretend to be another person." One who honestly believes that he is entitled to the title of the office under which he acts lacks the requisite intent and, thus, cannot be found guilty under Section 37.11(a). *See Stahmann v. State,* 126 Tex.Crim. 192, 70 S.W.2d 709, 709 (1934) (interpreting the predecessor statute). If Applicant's association with the fire department entitled him to claim that he was a fireman or if his belief that he was a volunteer fireman caused him to act without pretense, he could not have been impersonating, and the indictment would have failed to allege a crime for which Applicant could be prosecuted.

10. The indictment alleges that the public servant impersonated by Applicant was a "fireman," and Applicant and Counsel debate whether such fits within the definition of "public servant" as used in Section 37.11(a).

11. To allege a crime under Section 37.11(a)(1), an indictment must provide that the defendant had been engaged in some overt action in an official capacity that is more than merely showing official identification. *Tovar v. State,* 777 S.W.2d 481, 489 (Tex.App.-Corpus Christi 1989, pet. ref'd); *see Boyett v. State,* 368 S.W.2d 769, 771 (Tex. Crim.App.1963). The indictment alleges only

two acts: (1) the display of the badge and identification and (2) the sale of raffle tickets. Because the first is not sufficient by itself to constitute a crime under the statute, whether the second is an official act is critical in determining if the indictment alleges a crime.

12. Applicant contends that "the offer to sell a raffle ticket, is not an inducement within the meaning of Sec. 37.11(a), Tex.Pen.Code. where there is no compulsory quality to the offer." He argues that there was "no association between the identification of being a volunteer fire man and the offer to sell a raffle ticket, to the extent that one would be compelled to comply"—"the only tie-in between the two was the presentation of identification when requested."

13. Although this case was decided before the *Strickland* standard was established, the Supreme Court stated that "the standards articulated today do not require reconsideration of ineffectiveness claims rejected under different standards ... the minor differences in the lower courts' precise formations of the performance standard are insignificant...." *Strickland,* 466 U.S. at 696–97, 104 S.Ct. 2052.

theless, even though three of the four indictments were defective, we held that the attorney's failure to challenge the indictments before advising a plea was not ineffective under the legal duty test or the reasonably effective assistance standard, the precursors to the *Strickland* standard. To explain, we stated,

> Even if counsel had advanced the argument that the indictments were defective on the grounds assigned in these appeals, the State could have re-indicted correcting the defects.[14] Counsel may well have considered this factor when he evaluated appellant's situation and determined to accept the plea bargain of

five concurrent five years. This may have been the wiser course than facing the uncertainty of three re-indictments and the punishments that could then be inflicted.

*Id.* at 818.

■■■ Here, Counsel theoretically could have objected to the indictment. However, as we acknowledged in *Benoit*, the State would have likely responded by re-indicting Applicant, correcting the defects. Counsel could have filed a motion to quash on the ground that the raffle ticket sale was not an official act. Given the unsettled nature of the relevant law, it is uncertain how the court would have ruled on the motion.[15] If the court granted the motion,

14. For example, "the State could have easily re-indicted for delivery of diazepam alleging that it was a tranquilizer and the plea bargain may then have been no longer available." *Benoit*, 561 S.W.2d at 818.

15. *See supra* note 11. To violate Section 37.11(a), there must be an overt act in the pretended official capacity. *Tovar*, 777 S.W.2d at 489. Applicant contends that the common understanding of "official act" is the product or result of an official decree or command from one who is empowered to impose a duty or restraint upon the general public. Thus, he argues that the sale of raffle tickets cannot be an "official act" because it "has absolutely nothing to do with civil rule or government." However, the result does not seem to be so clear. The Texas Penal Code defines "act" as "a bodily movement . . . and includes speech." Tex. Penal Code § 1.07(a)(1). "Official act" has not been defined, but the act need not be within the legal power of the office the impostor purports to fill because the underlying purpose of the statute is to protect the public and maintain its trust in law enforcement. *Boyett*, 368 S.W.2d at 771; *Walker v. State*, 89 Tex.Crim. 180, 229 S.W. 853, 854 (1921); *Rice v. State*, 195 S.W.3d 876, 881–82 (Tex.App.-Dallas 2006, pet. ref'd); *Dietz v. State*, 62 S.W.3d 335, 340 (Tex.App.-Austin 2001, pet. ref'd). The sale of raffle tickets, coupled with Applicant's assertions that he was a fireman and the display of the badge, might rise to the level of an "official act" in the context of Section 37.11(a). For cases discussing official or overt acts, see, e.g., *Lewis v. State*, No.

01–96–01121–CR, 2001 WL 8575, 2001 Tex. App. LEXIS 51 (Tex.App.-Houston [1st Dist.] Jan. 4, 2001, no pet.) (determining that there was a sufficient act and display of intent to uphold a conviction for impersonating a public servant where the appellant attempted to gain access into a halfway house by identifying himself as being with the "Justice Department," presenting an identification card indicating such, and asserting that he had a right to see his friend); *McCoy v. State*, No. 14–98–01011–CR, 1999 WL 1016049, 1999 Tex.App. LEXIS 8392 (Tex.App.-Houston [14th Dist.] Nov. 10, 1999, pet. ref'd) (highlighting the importance of speech within the definition of "overt act" and determining that the evidence was sufficient to show a false assumption of a public servant's role and an overt action in that capacity where the appellant, talking to the driver of a neighboring car, claimed to be a police officer, showed a badge, and threatened to shoot the other driver if he continued to talk to him); *Marshall v. State*, No. 14–95–01183–CR, 1996 WL 491654, 1996 Tex.App. LEXIS 3836 (Tex.App.-Houston [14th Dist.] Aug. 29, 1996, writ ref'd) (emphasizing that speech was within the definition of "overt act" and upholding a conviction for impersonating a public servant where the appellant, stopped for speeding, repeatedly claimed that he was a county deputy and had law-enforcement type accessories on his car); *Tovar*, 777 S.W.2d 481 (holding that the appellant unlawfully arrested a security guard for impersonating a public official when the guard asked appellant to retrieve his weapon but did not identify himself as a police officer and was

then the indictment would have failed to allege a crime, like the *Benoit* indictments for delivery of diazepam. And if the court denied the motion, the prosecution would have likely continued, and the 10–year plea agreement might not have been available to Applicant, meaning that he would be facing the possibility of 25 years to life imprisonment upon conviction. Like the attorney in *Benoit,* Counsel could have considered these factors and reasonably decided to advise Applicant to enter a guilty plea.

Accordingly, we believe that Counsel's performance fell within the range of professional competence. Applicant has not overcome the strong presumption that counsel's conduct might be sound strategy and has, therefore, failed to prove ineffective assistance of counsel pursuant to *Strickland.* Because Applicant has failed to demonstrate error, we need not discuss whether Applicant was prejudiced by Counsel's performance.

## IV. CONCLUSION

We conclude that Applicant has not proven by a preponderance of the evidence that Counsel's representation fell below the objectively reasonable standard. Therefore, Applicant failed to demonstrate that his plea of guilty was unknowingly or involuntarily made because of ineffective assistance of trial counsel. Relief is denied.

WOMACK, J., filed a concurring opinion.

PRICE, J., filed a dissenting opinion, in which JOHNSON, J., joined.

JOHNSON, J., filed a dissenting opinion.

dressed in a guard's uniform, rather than that

WOMACK, J., filed a concurring opinion.

While I agree that relief should be denied, I do not join the Court's opinion because it is contrary to the principle that the sufficiency of an indictment is determined within the four corners of the indictment, without reference to the evidence that may be produced at trial.

The indictment alleged that the defendant "impersonate[d] a public servant, namely, a fireman, . . . by showing a badge and identification to induce the purchase of raffle tickets for fire fighter fund."

The Court's opinion begins to contradict our precedents in note 10: "To be guilty under Section 37.11(a)(1), a defendant must have been engaged in some overt action in an official capacity that is more than merely showing official identification. [Citations omitted.] The indictment alleges only two acts: (1) the display of the badge and identification and (2) the sale of raffle tickets. Because the first is not sufficient by itself to constitute a crime, whether the second is an official act is critical in determining whether the indictment alleges a crime."

I disagree. Whether the second act (sale of raffle tickets) is, in fact, an official act is critical in determining whether the defendant will be *convicted.* But that will depend on the evidence, not the allegation in the indictment.

On page 12, the opinion says that "Counsel could have filed a motion to quash on the grounds that Applicant was not impersonating a 'public servant' and that the raffle ticket sale was not an official act. Given the unsettled nature of the relevant law, it is uncertain how the court would have ruled on the motion. If the court granted the motion on either ground, then the indictment would have failed to allege

of a police officer).

a crime, like the *Benoit* indictments for delivery of diazepam."

This analysis is flagrantly incorrect. Again, a motion to quash tests only the facial validity of the indictment. Whether the *evidence* would fail to prove that the applicant was impersonating a public servant, or fail to prove that the raffle-ticket sale was an official act, could not be tested by a motion to quash the indictment.

The denial of relief is probably correct, but I cannot join the reasoning.

PRICE, J., filed a dissenting opinion in which JOHNSON, J., joined.

I construe the essence of the applicant's *pro se* ineffective assistance of counsel claim to be that, from any reasonably competent professional review of the indictment and the offense report in this case, trial counsel should have realized that there existed (at least) a serious question whether the State would be able to present facts at trial that could establish a violation of Section 37.11(a) of the Penal Code.[1] Instead, trial counsel advised the applicant that the State's case was "rock solid." [2] Even regarded in the light most favorable to a conviction, however, the facts enumerated in the offense report, which was attached as an exhibit to trial counsel's responsive affidavit, do not readily fit within the elements of the statute, much less make for a "rock solid" case. The applicant also swears that, had he been informed of the precarious nature of the State's case for impersonating a public servant, he would not have pled guilty but would have put the State to its proof, notwithstanding the favorable plea offer. Even after we remanded this cause to the convicting court for further factual development, its recommended findings of fact and conclusions of law fail to address any of these specific fact issues.[3]

We are the ultimate factfinder in post-conviction habeas corpus proceedings under Article 11.07 of the Code of Criminal Procedure.[4] In the absence of an adequate recommendation of factfindings from the convicting court, we are free to find the facts as we see them, so long as the record supports our determination.[5] Based on the record before us, I would find that the applicant has shown by a preponderance of the evidence that his trial counsel rendered professionally substandard assistance of counsel in failing to

---

1. Tex. Penal Code § 37.11(a).

2. The applicant attached an inmate declaration form to his application for writ of habeas corpus, *see* Tex. Civ. Prac. & Rem.Code § 132.001–132.003, in which he asserts that trial counsel assured him that he had "checked out" the State's case for impersonating a public servant under the statute and that it was "rock solid." We remanded the cause to the trial court for a responsive affidavit from trial counsel. Notably, trial counsel did not dispute the applicant's characterization, and his affidavit is otherwise consistent with the applicant's assertion that trial counsel regarded the State's evidence as amply sufficient to establish a violation of the statute.

3. The convicting court's findings of fact are simply that trial counsel "investigated the facts and law" and that his performance was "not deficient." It made no express findings with respect to the applicant's characterization of counsel's advice or whether the applicant would have chosen to reject the plea offer and proceed to trial had trial counsel's advice been any different.

4. Tex.Code Crim. Proc. art. 11.07. *See Ex parte Harrington*, 310 S.W.3d 452, 457 (Tex.Crim. App.2010) (convicting court is the "original factfinder," but this Court is the "ultimate factfinder"); *Ex parte Chabot*, 300 S.W.3d 768, 772 (Tex.Crim.App.2009) (same).

5. *See Ex parte Reed*, 271 S.W.3d 698, 727 (Tex.Crim.App.2008) ("when we deem it necessary, we will enter alternative or contrary findings and conclusions that the record supports.").

alert him to the (at best) questionable nature of the State's evidence against him, and that the applicant's decision to plead guilty was uninformed and therefore not knowingly made. Moreover, I would. find that, but for trial counsel's deficiency, the applicant would not have plead guilty but would have insisted on going to trial. On the basis of these findings, I would conclude as a matter of law that the applicant's Sixth Amendment right to the effective assistance of counsel was not honored in this case.

Whether or not trial counsel should have filed a motion to quash the indictment is an entirely ancillary question. There was nothing necessarily wrong with the State's pleading, at least on its face. The pertinent question is instead whether, in light of his knowledge of the contents of the offense report, trial counsel was deficient in failing to advise his client of the substantial possibility that either a factfinder at trial or an appellate court on appeal would conclude that the facts at the State's disposal do not establish a violation of Section 37.11(a). Had trial counsel so informed the applicant, and the applicant had nevertheless persisted in his decision to plead guilty in exchange for the favorable plea offer, I would find no merit to his claim of ineffective assistance of counsel, for reasons the Court gives today. For, in that event, the applicant would have made an *informed* decision that the possibility of acquittal at trial or on appeal was not substantial enough to merit risking a life sentence in the face of the State's favor-

able plea offer of ten years. But, as far as I am concerned, it constitutes deficient performance for trial counsel to take that choice away from the applicant by counseling him in error that the State's case was "rock solid." An accused is entitled to the effective assistance of counsel in the plea bargaining process, and a decision to plead guilty that is predicated upon erroneous advice of counsel is not made knowingly and voluntarily.[6] Trial counsel's advice to his client in this case was incompetent, if not, strictly speaking, "erroneous," in the sense that it derived from a patently unprofessional assessment of the strength of the State's case in view of the statutory elements and the known facts.[7] Accepting, as I do, the applicant's assertion that he would have chosen differently had he been competently advised,[8] I would grant habeas corpus relief.

Because the Court does not, I respectfully dissent.

JOHNSON, J., filed a dissenting opinion.

Applicant was selling raffle tickets in the parking lot of a grocery store, with the manager's permission. There is nothing in the record that supports a conclusion that applicant was holding himself out as a fireman, regular or volunteer, in an effort to entice shoppers to purchase a ticket. The only evidence is the offense report of an officer who was investigating a complaint by the mayor that applicant did not have the proper approval from the city to

---

**6.** *Ex parte Battle,* 817 S.W.2d 81, 83 (Tex. Crim.App.1991).

**7.** *Cf. Ex parte Gallegos,* 511 S.W.2d 510, 511 (Tex.Crim.App.1974) (in a case decided before *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), trial counsel was found to have rendered ineffective assistance of counsel by advising his client to accept a

guilty plea offer without informing him that a "strong argument" could be made that his conduct did not constitute a violation of the penal statute under which he was charged; trial counsel should "at the very least" have explained the situation to his client to ensure that any guilty plea was knowingly and voluntarily entered).

**8.** *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

sell raffle tickets. That report reveals that applicant is six feet tall and weighs 400 pounds. He, according to her report, made no claim of being a fireman until she asked him for identification.

Officer Solly's report indicates that she went to the grocery store to investigate after the mayor reported the violation of a Teague city ordinance.

On the date and time listed above, and at the Teague City Hall in Teague, TX, Freestone County, I did receive a complaint from Mayor Jacqueline Utsey in reference to a subject at Brookshire Brothers in Teague, TX soliciting citizens for the fire fighters fund. She also stated that he did not have a permit to do so (per: Teague Code of Ordinances 4.502 application; information to be contained; permit). Witness Utsey also stated that on 08/29/2008 at approximately 10:30 am, she went to Brookshire Brothers and there was a white male sit[t]ing at a table soliciting on behalf of the volunteer fire department. He also asked if she was a hunter. She told him no and went into the store. When she returned, she asked him if he would be here a while. He stated that he would be there about 45 more minutes. He also stated that part of the money would go to soldiers in Iraq, and part would go to the fire department. She thanked him for the information, and left. That is when she came and found me.

S[g]t. J. Monks and myself then went up to Brookshire Brothers, and did observe a white male sitting at a table with a bunch of flyers taped to it. The flyers stated that he was collecting money for fire fighters, Marines in Iraq, and the Roping the Wind Foundation. When I walked up to the subject, I asked him what he was raising money for. He stated to me that he was raising money for fallen fire fighters and our soldiers. He then asked me if I would like to buy a raffle ticket. I then asked him if he

was a fire fighter, and he said yes. He then showed me a Grandview Fire Department identification card in an attempt to have me donate to him. I made the subject aware of the violation of city ordinance 4.502 (permits required from solicitors). I then identified him as William Lee Niswanger (W/M, DOB: 07/22/1965, TXDL# 14684108). I asked the suspect what he was doing. He then stated that he was raising money for the fire fighters. I asked him if he was a fire fighter. He stated that he was a approximately [sic] with Grandview Fire Department. I then asked to see his credentials. He showed me a Grandview approximately [sic] badge that was in a brown wallet, and a Grandview approximately [sic] identification card that was in his back pocket as well. I then asked the suspect what he had in the brown cardboard box that was on the table, he said that it was just some stuff that he needed. I asked him if I could look in the brown box. He gave me consent. I did recover a 6″ knife that was not in its sheath. I asked him what it was doing there, and he stated that he did not know that it was there. I also recovered a roll of unused blue raffle tickets. I then asked the suspect how much money that he had raised; he stated that he had raised about seventy dollars or so. I asked him if I could look in his solicitation jar that was on the table as well. He gave me consent. I did recover about 20 to 30 assigned raffle tickets inside the jar. I asked him where the rest of the money was. He had told me earlier the rest of the money was in his back pocket. He then retrieved about sixty dollars. I then asked him if that was his white Ford van parked close by. He stated that it was and then gave me consent to search his van. I did recover more items from the van (see itemized property list.) I then

asked the suspect to follow me up to the police station to have a further talk. He did agree to do so.

When we arrived at the police station, I had witness Utsey make a positive ID on the subject that solicited her at Brookshire Brothers. She did positively identify him. She then gave a witness statement as to the fact. I also had her write me a statement as to the previous incident that day. She did so. The subject was then Mirandized. I then advised him that he was under arrest. He then made a statement that he was collecting money for a foundation that he created. He also advised me that he was a approximately [sic]. I then had Sgt. J. Monks contact Grandview Fire Department, to ascertain his employment. S[g]t. Monks spoke with the treasurer of the Fire Department who he identified as Bryan Anderson. Mr. Anderson stated that he was not shown as a volunteer of any kind. (Grandview V.F.D. Contact info. 1–817–866–2333). [Van towed, applicant booked into Freestone County jail, questioned further, gave consent to search of his residence.]

According to Officer Solly's report, the mayor did not assert that applicant claimed to be a fireman or that he used that claimed status to induce her to buy a raffle ticket; she complained only because she believed that he was violating a city ordinance. Officer Solly's report is repetitive in a way that distorts the chronological order of events and the motivation for showing fire fighter identification. First she says that, after he asked her if she wanted to buy a raffle ticket, she asked him if he were a fireman. He said, "Yes," and showed identification "in an attempt to have me donate to him." Three sentences later in her report, she stated that she asked applicant if he were a fire fighter and then asked him for his identification, which he showed to her. These two chronologies cannot both be true. Regardless of which sequence is taken as true, however, applicant made no claim of being a fireman until Officer Solly asked him if he was one.

There is no assertion that applicant was wearing any part of a fireman's uniform or any insignia of a fireman. Common sense tells a reasonable person that someone who is six feet tall and weighs 400 pounds is not a fireman. There is no evidence that he asserted to any person other than a uniformed police officer, upon her request and *after* his inquiry as to whether she wanted to buy a raffle ticket, that he was a fireman, only evidence that he claimed that he was collecting money and selling raffle tickets for the benefit of fire fighters.

The statute states that

(a) A person commits an offense if he:

(1) impersonates a public servant with intent to induce another to submit to his pretended official authority or to rely on his pretended officials acts; or

(2) knowingly purports to exercise any function of a public servant or of a public office, including that of a judge and court, and the position or office through which he purports to exercise a function of a public servant or public office has no lawful existence under the constitution or laws of this state or of the United States.

Texas Penal Code, section 37.11.

The indictment filed by the district attorney stated that

Applicant did then and there impersonate a public servant, namely a fireman, with intent to induce Shawn Solly to submit to the pretended official authority of the defendant or to rely on the pretended official acts of the defendant by showing a badge and identification to induce the purchase of raffle tickets for fire fighter fund.

**624**

Assuming without deciding that a volunteer fire-fighter is a public servant, there is no evidence that selling raffle tickets is an "official act." Fire fighters, in uniform and on their own time, sometimes solicit funds for charity at stop lights, but their mere status as public servants does not elevate such solicitation to an "official act." Fire fighters may, as a part of their "official authority" or as a "function of a public servant," command citizens to stay away from a fire or to refrain from "helping" them fight a fire. They do not, as a part of their "official authority," have the power to make citizens throw money into a boot or buy raffle tickets, nor are those things a "function of a public servant." There can be no inducement to "submit to his pretended official authority" when the charged act is not within any official authority of a public servant.

Applicant was guilty of unlawfully carrying a weapon, the 6″ knife, and he may have been guilty of fraud or theft. He was in no way guilty of impersonating a public servant.

I conclude that applicant has proven by a preponderance of the evidence that his counsel's performance was deficient. He has also shown that there is a reasonable probability that, but for counsel's deficient representation, he would not have plead guilty and would have insisted on going to trial. Therefore, I would find that applicant's plea was not knowing and voluntary. He is entitled to relief. Because the Court does not grant him that relief, I dissent.