

# NUMBER 13-10-00085-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## EX PARTE RICHARD MARTINEZ

**On appeal from the 94th District Court
of Nueces County, Texas.**

## MEMORANDUM OPINION ON REHEARING

**Before Justices Garza, Vela, and Perkes
Memorandum Opinion On Rehearing by Justice Rose Vela**

On April 28, 2011, we dismissed this case for want of jurisdiction. Afterwards, applicant, Richard Martinez, filed a motion for rehearing, which we granted on July 14, 2011. We withdraw our original opinion and judgment and substitute the following opinion and judgment in its place. Martinez was indicted for attempted sexual assault. *See* TEX. PENAL CODE ANN. § 15.01(a) (West 2011), § 22.011(a) (West 2011). Pursuant to a plea-bargain agreement, he pleaded guilty, and the trial court sentenced him to six years' imprisonment, but suspended the sentence and placed him on community

supervision for six years. While on community supervision, Martinez filed a post-conviction application for writ of habeas corpus.[1] After an evidentiary hearing, the trial court denied relief. In three issues, Martinez argues: (1) he is actually innocent of the offense; (2) his plea was involuntary; and (3) he received ineffective assistance of counsel. We affirm.

## I. PROCEDURAL HISTORY

On September 27, 2007, a Nueces County grand jury indicted Martinez for attempted sexual assault. The indictment recited, in relevant part, that Martinez "with the specific intent to commit the offense of Sexual Assault of [P.D.T.], [did] an act, to-wit: BY REMOVING [P.T.D.'s] CLOTHES AND SPREADING HER LEGS, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended, . . . ."

On January 17, 2008, Martinez pleaded guilty to the offense before Judge Bobby Galvan. During the plea hearing, Judge Galvan admitted the Judicial Confession and Stipulation, which included a statement from the victim, P.T.D., in which she stated, in relevant part:

> My ex-boyfriend, Richard Martinez, Jr., had been living with me . . . up until he assaulted me on 05/27/2007. On that day my phone rang at about 3:00 a.m. When Richard answered it no one was there. . . . A second call came a couple of minutes later and Richard had me answer the phone. When I did a male voice said hello. Richard then took the phone from me and when he got on it the caller hung up. Richard then became angry. He started to go through the house looking for a number to match the

---

[1] The writ application was on the preprinted form for filing an application for writ of habeas corpus under article 11.07 of the Texas Code of Criminal Procedure. *See* TEX. R. APP. P. 73.1(a). Writs filed pursuant to article 11.07 are returnable only to the Texas Court of Criminal Appeals. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 3(a) (West Supp. 2011). At the habeas hearing, the parties agreed to treat the writ application as if it had been filed pursuant to article 11.072 of the Texas Code of Criminal Procedure. Therefore, we have jurisdiction of this appeal. *See id.* art. 11.072, § 8 (West 2005).

second call. He then calmed down and he got upset again when he asked me to have sex with him and I said no. He told me that I couldn't tell him no. He said that I was his girlfriend and that's what I was for. He then ripped off my panties and got on top of me. (I since put the panties in a zip lock bag and I gave them to Detective Rodriguez) He held me down with his elbows on my shoulders. I was wriggling so that he could not control me and hold me down. I started to try to fight him and I got off the bed. He then grabbed my t-shirt and forced me back on the bed. He pulled the shirt off of me. He then held me down to where I was pinned on the bed. He then slapped me in the face. He pushed my legs apart and was trying to penetrate me but couldn't. I kept trying to get away. When I finally did I went to the closet to get some clothes so that I could leave but Richard stopped me and told me "you're not fucking going anywhere!" I started to yell for help hoping someone would here [sic] and call the police. I kept trying to get clothes. Richard kept me from doing that. I finally got in the closet and I got my phone and called my mom, who was out of town, and asked her to get me some help. Richard kept looking at the door thinking the police were going to show up. I got a wrap that I keep on the sofa and wrapped it around myself. Richard took that from me also and he kept telling me that I wasn't going to leave him. I knew I wasn't going to get out so I started screaming louder. Richard told me to quit screaming or he was going to get in trouble. Richard then started to plead with me to get quiet. When I didn't Richard put his hand over my mouth to where I couldn't breathe. He stopped and I was able to get my breath. He then did it again. He tried to force me into the bathroom and into the closet. I was trying to get dressed to leave and he forced me on the bed and held a pillow over my face. He held it there long enough to where I think I blacked out for a couple of seconds. When I came to I saw Richard go to the door and he saw an officer outside the door but the officer never knocked. I got my keys and I was able to get my cell phone from Richard after struggling with him for it. When I got outside the officer came to me and I told him what had happened but I didn't make a report. I went to my mom's house and my aunt, . . . was there. Richard called me three times but I didn't talk to him. He then showed up at my mom's house and was knocking on the doors. I called 911 and the police came. Richard was arrested. I am in fear that when he gets out of jail he will come after me again. . . .

The Judicial Confession and Stipulation also included a letter from P.T.D. in which she stated, in relevant part:

Detective Rodriguez,

3

As per my voice mail message a few days ago, I have changed my mind on pressing charges against Richard Martinez, Jr. He said that he was sorry and I feel like things may have been blow[n] out of proportion while emotions were high. I hope that you can understand that everyone could use forgiveness.

Please let me know who (DA) I need to speak to in order to give pardon to Mr. Martinez.

I know longer feel in danger and would like to leave the law out of his life. He is a good person. Sometimes we all need a break.

On February 15, 2008, trial counsel filed a motion for new trial, alleging Martinez "has acquired additional evidence which is vital to the issue of guilt or innocence" and he "did not voluntarily enter his plea of guilty." During the new-trial hearing, trial counsel introduced two exhibits: (1) a marriage license obtained by Martinez and P.D.T., dated October 12, 2007; and (2) P.D.T.'s affidavit of non-prosecution dated October 2, 2007. In her affidavit, P.D.T. stated, in relevant part:

For approximately one month I have been living with Richard Martinez. We are considering marriage and are very close at this time. In May of this year, Richard and I had a big argument. I left the apartment and went to my mothers [sic]. He would not leave me alone and I got upset. I called the police and I told the police he had attempted to assault me. I was very upset and blew things out of proportion and probably exaggerated the overall incident. As a result, Richard was arrested and charged with an assault. Several days later, I went to the police department and I will [sic] still very upset. I told the officer that he had attempted to sexually assault me but truthfully that was exaggeration.

Since his release from custody Richard and I have met and we have worked out our differences. We have been living together approximately one month. We are seriously talking about marriage. I do not wish to pursue these charges. I have previously contacted the police officer and advised him I did not want the charges filed. I also spoke to the Victims Advocate at the police department and advised them I did not want these charges filed. I also wrote them a letter confirming my wishes.

4

I was advised on October 1st that Richard had been indicted. I did not intend for this to happen and I do not wish to prosecute nor will I testify against him.

I am signing this statement on my own free will. I am not being pressured, threatened or in any way forced to sign this statement. I voluntarily came to Richard's lawyer's office and asked to sign the statement so my wishes could be made clear to the District Attorney's Office. I will also contact the Victims Advocate at the District Attorney's Office to schedule a meeting if necessary.

After hearing evidence and argument, Judge Galvan denied the motion for new trial.

On December 11, 2009, habeas counsel filed an application for writ of habeas corpus in which he complained: (1) Martinez received ineffective assistance of trial counsel; (2) his plea was involuntary; and (3) he was actually innocent of the offense. On January 14, 2010, Judge Galvan held a hearing on the writ. During the hearing, Martinez testified he pleaded guilty to attempted sexual assault and is currently on probation for that offense. With respect to the facts of the offense, he explained he and his fiancee, P.D.T., lived together and that early one morning while they were having "consensual compassion," he answered her telephone. He discovered the caller was P.T.D.'s ex-boyfriend, who told him "some disturbing things." After speaking to him, Martinez was under the impression that P.T.D. and her ex-boyfriend were having a sexual relationship. Martinez threw the phone into the toilet, and he and P.D.T. argued with each other until about 5:30 a.m. when she went to her mother's house. Later, P.T.D. told the police Martinez had assaulted her. Martinez testified he is innocent of the offense. When habeas counsel asked him, "What is her motive to lie to the police and say you assaulted her?," he said:

5

> I feel now that I know the whole story myself. I feel that she was trying to cover up her—her side of the story by betraying me because I found out she had—she was pregnant. She showed me a sonogram after the fact that she filed this against me, after the fact of filing two affidavits and saying it's truly overexagerated[sic].

He stated the sonogram showed P.T.D. "was pregnant with twins and I don't make any twins."

Martinez testified that after he was released on bond, P.T.D. "did recant and I forgave her." Afterwards, they obtained a marriage license but never got married. Martinez maintained P.T.D. made two recantations concerning the offense. One occurred in a letter, which was part of the State's stipulation of evidence introduced at the plea hearing. The other occurred in a sworn affidavit that was introduced at the motion-for-new-trial hearing. When defense counsel asked Martinez, "Now, these affidavits, what do you understand them to say—to mean?," he said,

> [B]etween me and her [P.T.D.], I finally had closure of where she had made up the story, because obviously, she said something. But at the end, I finally discovered that she really didn't mean to say this. She really didn't. In there it says . . . [s]he truthfully overexagerated[sic] and made up things. She says it in that form because she doesn't want to, you know,—I guess her pride doesn't say she's wrong, but she still admitted that she was wrong.

Martinez testified he "was expecting for the charge to be dropped" and that "[t]here is a possibility that I made bruises on her [P.T.D.'s] arm because she was overreacting and attacking me and I was just holding—while we're standing, holding her to try to control her. Those bruises are not from pinning her down and trying to rape her."

After the hearing, Judge Galvan denied all requested relief. This appeal followed.

6

A. Actual Innocence

By issue one, Martinez argues he demonstrated he is actually innocent of the offense of attempted sexual assault.

### 1. Standard of Review

"[T]o prevail on a writ of habeas corpus, the proponent must prove his allegations by a preponderance of the evidence." *Ex parte Cummins*, 169 S.W.3d 752, 757 (Tex. App.—Fort Worth 2005, no pet.); *see Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995); *Ex parte Adams*, 707 S.W.2d 646, 648 (Tex. Crim. App. 1986). In *Ex parte Garcia*, 353 S.W.3d 785 (Tex. Crim. App. 2011), the court of criminal appeals explained that,

> In an article 11.072 habeas case, however, the trial judge is the sole finder of fact. There is less leeway in an article 11.072 context to disregard the findings of a trial court. Because the court of appeals and this Court are truly appellate courts in the article 11.072 context, it makes sense as a matter of logic that the *Guzman v. State* standard[2] would control.

*Id.* at 787–88 (citations omitted).

"An appellate court reviewing a trial court's ruling on a habeas claim must review the record evidence in the light most favorable to the trial court's ruling and must uphold that ruling absent an abuse of discretion." *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). In a habeas case, the trial court can "believe or disbelieve any of the witnesses. . . ." *Id.*

The court of criminal appeals recognizes two types of "actual innocence" claims: (1) a *Herrera* claim, "which involves a substantive claim in which applicant asserts his

---

[2] *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

bare claim of innocence based solely on newly discovered evidence"; and (2) a *Schlup* claim, which "is a procedural claim in which applicant's claim of innocence does not provide a basis for relief, but is tied to a showing of constitutional error at trial." *Ex parte Franklin*, 72 S.W.3d 671, 675 (Tex. Crim. App. 2002) (citing *Schlup v. Delo*, 513 U.S. 298 (1995); *Herrera v. Collins*, 506 U.S. 390 (1993)) (other citations omitted). The two claims require an applicant to meet different burdens in order to obtain relief. *Id.*

In this case, Martinez accompanied his claim of actual innocence with an assertion of two constitutional errors: (1) ineffective assistance of trial counsel; and (2) an assertion that his guilty plea was involuntary. Thus, he has raised a *Schlup* claim. *See id.* "[I]n a *Schlup*-type situation, a petitioner must show that the constitutional error 'probably resulted' in the conviction of one who was actually innocent." *Id.* at 676 (quoting *Schlup*, 513 U.S. at 326–27). "The [*Schlup*] Court articulated the meaning of "probably resulted" as follows: 'The petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Id.* (quoting *Schlup*, 513 U.S. at 327).

In the present case, P.D.T.'s written statement (included with the Judicial Confession and Stipulation of Evidence) to the police showed that Martinez asked her to have sex with him. When she refused, he told her she could not tell him "no." He then ripped off her panties, got on top of her, and held her down. When she got off the bed, he grabbed her t-shirt and forced her back on the bed. He pulled off her t-shirt, held her down on the bed, slapped her face, and pushed her legs apart. He tried to "penetrate" her but could not. When she got away, she started screaming, and he put his hand over

8

her mouth so tight she could not breathe. He once again forced her onto the bed. This time, he held a pillow over her face.

Martinez's claim that he is actually innocent of the offense of the attempted sexual assault of P.D.T. is based upon: (1) P.T.D.'s letter to Detective Rodriguez (included with the Judicial Confession and Stipulation); (2) her affidavit of non-prosecution; and (3) his testimony at the habeas hearing where he testified he was "completely innocent" of the charge of attempted sexual assault. In her letter to Detective Rodriguez, P.T.D. stated she no longer wanted to press charges against Martinez and that she felt "like things may have been blow out of proportion while emotions were high." This letter, however, does not void the declarations she made in her written statement to the police in which she implicated Martinez in the offense of attempted sexual assault. Furthermore, the letter does not constitute evidence of Martinez's innocence.

In P.D.T.'s affidavit of non-prosecution, she stated that when she told the police Martinez had "attempted to assault" her, she "was very upset and blew things out of proportion and probably exaggerated the overall incident." In addition, she stated that when she "went to the police department[,]" she was "still very upset. I told the officer that he had attempted to sexually assault me but truthfully that was exaggeration." We note that in her written statement to the police, she recounted in great detail about how Martinez attacked her and tried to sexually assault her. In her affidavit of non-prosecution, however, she does not state which assertions in her written statement to the police were exaggerated. Thus, one cannot conclude from her affidavit of non-prosecution that Martinez did not attempt to sexually assault her. Even though she

9

stated that when she told the officer that Martinez "had attempted to sexually assault me but truthfully that was exaggeration[,]" this does not constitute a denial of the assertions, showing he attempted to sexually assault her. She did not say she had lied to the police about Martinez's efforts to sexually assault her, and she did not specifically deny he attempted to sexually assault her. Consequently, her affidavit does not void her written statement to the police, which implicated Martinez, and it does not constitute evidence of his innocence.

During the habeas hearing, Martinez testified he was "completely innocent" of the allegation that he attempted to sexually assault P.D.T. He also testified that P.D.T. was in a long-term relationship with him and had become pregnant with twins. She had hidden this fact from him, and she had been communicating with her ex-boyfriend, who Martinez believed was the likely father of the twins. However, in a habeas proceeding, the trial court can "believe or disbelieve any of the witnesses. . . ." *Kniatt*, 206 S.W.3d at 664. We hold that Martinez has not shown that it is more likely than not that no reasonable juror would have convicted him in the light of the evidence that he requests us to consider.

## B. Voluntariness of the Guilty Plea

In issue two, Martinez contends the guilty plea was involuntary because: (1) "his plea was entered into only because of the threat of incarceration for failing to comply with pre-trial conditions"; and (2) his trial "attorney told him his only options were to plead guilty or go to prison."

10

**1. Applicable Law**

"A guilty plea constitutes a waiver of three constitutional rights:  the right to a jury trial, the right to confront one's accusers, and the right not to incriminate oneself."  *Id.* (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)).  Consequently, a person must enter a guilty plea knowingly, intelligently, and voluntarily so that the plea is consistent with due process of law.  *Id.* (citing *Boykin*, 395 U.S. at 242); *see* TEX. CODE CRIM. PROC. ANN. art. 26.13(b) (stating, "No plea of guilty or plea of nolo contendere shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary.").  "To be 'voluntary,' a guilty plea must be the expression of the defendant's own free will and must not be induced by threats, misrepresentations, or improper promises."  *Id.* (citing *Brady v. United States*, 397 U.S. 742, 755 (1970)).  In *Aguirre-Mata v. State*, the court of criminal appeals said that the *Boykin* Court stated "generally that state courts should make sure that a guilty-pleading defendant has a full understanding of what the plea connotes and of its consequences."  125 S.W.3d 473, 475 (Tex. Crim. App. 2003) (internal quotes omitted).  The defendant must be aware of all the direct consequences of his guilty plea.  *Mitschke v. State*, 129 S.W.3d 130, 135 (Tex. Crim. App. 2004).  "An applicant seeking habeas corpus relief on the basis of an involuntary guilty plea must prove his claim by a preponderance of the evidence."  *Kniatt*, 206 S.W.3d at 664 (citing *Ex parte Morrow*, 952 S.W.2d 530, 535 (Tex. Crim. App. 1997)).

**2. Analysis**

Martinez states in his appellate brief that he pleaded guilty "only because of the threat of incarceration for failing to comply with pre-trial conditions."  He also states that

11

his trial counsel "told him his only option was to plead guilty or go to prison." We note that at the plea hearing, the trial court asked Martinez if he was "pleading guilty freely and voluntarily?" To this, he said, "Yes, sir." At the new-trial hearing, trial counsel asked him, "And the morning that we entered that [guilty] plea do you recall if I advised you that there was a warrant issued for your arrest for noncompliance with going to a pretrial supervision officer?" He said, "That morning, yes." Next, trial counsel asked him, "[D]o you recall whether you were told that if we did not resolve the case that morning that you would be going to jail?" Martinez said, "Yes." However, when trial counsel asked him, "And do you believe you entered the plea voluntarily?," he said, "Voluntarily, yes."

At the habeas hearing, Martinez testified that "[W]hen I pleaded [guilty], I had an open warrant." When the trial court asked Martinez, "You were placed on pretrial conditions, were you not?" Martinez said, "Yes. And that's why I had that open warrant." When habeas counsel asked Martinez, "[O]n the day of court, it's plead out or you're going to jail, right?," he said, "I was put in a box and squared in the corner. I had to use my own logical thinking." At that point, the trial court stated, "Of course, you didn't follow pretrial conditions. And you put yourself in a position where you get locked up and then you're trying to tell the Court, that because I got locked up, I was under duress. . . ."

Thus, the appellate record indicates that because Martinez violated a pretrial condition, he faced incarceration in the county jail. He put himself in that predicament. Moreover, during the plea hearing, he told the trial court he was entering his guilty plea freely and voluntarily. Given the record evidence, the trial court could have reasonably concluded Martinez had entered his guilty plea voluntarily; i.e., that his guilty plea had not

12

been induced by threats, misrepresentations, or improper promises. Issue two is overruled.

## C. Ineffective Assistance of Trial Counsel

In issue three, Martinez contends he received ineffective assistance of trial counsel.

### 1. Standard of Review

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, No. 10-209, 2012 WL 932019, at *5 (U.S. March 21, 2012) (citing *Missouri v. Frye*, No. 10-444, 2012 WL 932020, at *8 (U.S. March 21, 2012)). "During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Id.* (quoting *McMann v. Richardson*, 392 U.S. 759, 771 (1970)). "A guilty plea is not considered knowingly and voluntary if it is made because of ineffective assistance of counsel." *Ex parte Niswanger*, 335 S.W.3d 611, 614-15 (Tex. Crim. App. 2011) (citing *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980)).

"To determine whether to grant habeas corpus relief for ineffective assistance of counsel, Texas courts apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires the applicant to establish two components." *Ex parte Niswanger,* 335 S.W.3d at 615. "First, the applicant must show that his attorney's performance was deficient, meaning it 'fell below an objective standard of reasonableness' under prevailing professional norms and according to the necessity of the case." *Id.* (citing *Strickland*, 466 U.S. at 687-88; *Ex parte Morrow*, 952 S.W.2d at 536). "Because there 'are countless ways to provide effective assistance in any given

13

case,' a reviewing court must be highly deferential and 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Id.* (quoting *Strickland*, 466 U.S. at 689).

"Second, the applicant must demonstrate that he was prejudiced by his attorney's performance—'there is a reasonable probability[3] that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). "For claims related to the entering of a plea, the applicant satisfies the prejudice prong by showing a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985)). "Still, the applicant 'need not show that his case would have received a more favorable disposition had he gone to trial.'" *Id.* (quoting *Johnson v. State*, 169 S.W.3d 223, 231 (Tex. Crim. App. 2005)).

"Counsel's function 'is to make the adversarial testing process work in the particular case.'" *Id.* (quoting *Strickland*, 466 U.S. at 690). "Accordingly, competent advice requires that an attorney conduct independent legal and factual investigations sufficient to enable him to have a firm command of the case and the relationship between the facts and each element of the offense." *Id.* (citing *Strickland*, 466 U.S. at 691). "The applicant has the burden to prove ineffective assistance of counsel by a preponderance of the evidence." *Id.* (citing *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App.

---

[3] "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Ex parte Niswanger*, 335 S.W.3d 611, 614 (Tex. Crim. App. 2011) (quoting *Strickland*, 466 U.S. at 694).

14

1999)). "Allegations of ineffectiveness must be based on the record, and the presumption of a sound trial strategy cannot be overcome absent evidence in the record of the attorney's reasons for his conduct." *Id.* (citing *Busby v. State*, 990 S.W.2d 263, 269 (Tex. Crim. App. 1999)). "The reviewing court must look to the totality of the representation, and its decision must be based on the facts of the particular case, viewed at the time of counsel's conduct so as to eliminate hindsight bias." *Id.* (citing *Strickland*, 466 U.S. at 690).

### 2. Analysis

Martinez argues trial counsel was ineffective because he "did not investigate and failed to learn [that Martinez] and the complaining witness [P.D.T.] had entered into a marriage license and that she was pregnant with twins." Martinez pleaded guilty to the offense of attempted sexual assault on January 17, 2008. He and P.D.T. obtained a marriage license on October 12, 2007. The appellate record does not show when P.D.T. told Martinez she was pregnant with twins. Even assuming trial counsel was deficient for failing to discover these facts, Martinez has failed to satisfy the prejudice prong of *Strickland v. Washington* by showing a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Martinez also argues that trial counsel "failed to conduct any examination of the scene or talk to any persons familiar with [Martinez] and [P.D.T.'s] relationship." However, Martinez does not state what if anything trial counsel would have discovered if he had visited the crime scene or talked to persons familiar with their relationship. Moreover, even assuming trial counsel was deficient for failing to perform these tasks,

15

Martinez has failed to satisfy the prejudice prong of *Strickland v. Washington* by showing a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Issue three is overruled.

### III. CONCLUSION

We affirm the trial court's order denying relief.


ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
5th day of April, 2012.